KANSAS & TEXAS COAL COMPANY v. CHANDLER.

Opinion delivered June 27, 1903.

1. MASTER AND SERVANT—CONTRIBUTORY NEGLIGENCE.—An inexperienced miner who was injured by the fall of a rock from the insufficiently supported roof of a coal mine can not, as matter of law, be said to have been guilty of contributory negligence in working under the roof where he had requested the foreman to furnish him sufficient timbers to prop the roof, and was told by the latter to go ahead, that he would send the props needed. (Page 521.)

2. SAME—DUTY TO FURNISH SAFE PLACE TO WORK.—An instruction that it was the duty of a master to furnish his employee a reasonably safe place to work in was misleading in a case where the evidence showed that it was the duty of the master to furnish suitable timbers with which to make safe the room in which the employee was working, and of the employee to make the room safe by the use of such timbers. (Page 523.)

3. SAME—DUTY TO WARN SERVANT.—An instruction that, if an employee was without experience in a certain employment, it was the duty of the master to warn him of the dangers he was liable to encounter in the work, was misleading where the evidence showed that the employee knew the danger of the employment, and where his only ground of complaint was that the master failed to furnish him material to render the place in which he worked safe. (Page 524.)

4. SAME—ASSUMPTION OF RISKS.—An instruction, in a suit by an employee for injuries received from the falling of the roof of the mine in which he worked, that if the plaintiff requested the foreman to furnish him props to sustain the roof, and the foreman promised to furnish them, then, if the plaintiff relied on the

promise of the foreman, and for that reason continued his work, he did not assume the risk incident upon the failure to furnish sufficient props, was erroneous, as the question whether he assumed the risk in remaining at work in the mine with the roof unpropped was for the jury under all the circumstances of the case.  (Page 526.)

Appeal from Sebastian Circuit Court.

STYLES T. ROWE, Judge.

Reversed.

### STATEMENT BY THE COURT.

W. F. Chandler was employed to work as a miner in a coal mine owned by the Kansas & Texas Coal Company.  He commenced work about the 18th of January, 1900, and continued in the mine until the 19th day of February, when he was injured by the fall of a rock from the roof of the room in which he was at work mining coal.  Chandler sued the company for damages.  On the trial he testified that he was without experience in mining coal before being employed by the company, though his testimony on this point is not clear, for in reply to a question about whether Godt, the foreman of the company, or Brown, the local superintendent, knew that he had previously worked as a miner or not, he replied, "I told Billie Brown I had dug coal."  The examination then proceed as follows: "Q.  What did you tell them, if you told them anything, about mining coal?  A.  I never told them anything about mining coal a minute.  Q.  Did the company know you had not mined coal much when they employed you?  A.  I don't know whether they did or not.  Q.  I thought you told Mr. Brown that you hadn't mined coal at all?  A.  Yes, I told him that I hadn't mined coal; that I had a job firing."  He also testified that none of the employees of the company cautioned him or gave him any instructions about how to protect himself against the dangers of mining.  The testimony shows that plaintiff and a miner named Meyers had been working together in the same room. The company constructed the passage way to the rooms in which the miners worked.  Along this passage way or entry a track was laid on which a car was operated, the car being drawn by a mule. Opposite the entrance to the room in which the miner worked a switch was provided by which cars when needed could be brought into the room.  The cars for the miner were delivered by the driver

at the switch at the entrance to the rooms, at which place it was received by the miner, who pushed it into the room near to the face of the coal. The evidence shows that it was the duty of the company to properly safeguard the passage ways and also provide necessary timbers for the miner to securely prop the roof of his room. The company delivered these timbers at the switch when it delivered the cars—that is, at or near the entrance to the room. These timbers, designed to support the roof of the room and prevent it falling, are called "props" and "caps." A prop is a stick of wood 6 to 8 inches square and from 4 to 5 feet long, according to the height of the roof from the floor. A cap is a piece of wood 12 to 16 inches long, about 4 to 6 inches wide, and from $\frac{1}{2}$ inch to $1\frac{1}{4}$ inches thick. These caps, as the name implies, are used on top of the prop, so that it will cover more space on the roof, and give greater bearing against the roof to support it than the end of the prop would afford. Besides these timbers, ties are used in the mines upon which to lay the track that the cars go on. Ties are about the same thickness as props, and are sometimes used for props; but ties cost more than props, and for that reason their use as props is discouraged by the company.

Chandler testified that while working in the mine he needed timbers to support and safeguard his roof, and that on Friday before the injury occurred on Monday he ordered the driver to bring him some props and caps, but that he failed to bring them. He did not work on Saturday. On Monday, about noon, he spoke to Godt, the foreman of the company, whose duty it was to see that timbers of that kind were furnished, and told him that he needed timbers. "He told me," said Chandler, "to go ahead; that he would send me timbers in plenty time to put up; that he wanted that place drove through." He further testified that when he went to work after this conversation with the foreman he had no props or caps, and that there were no timbers in his room or near the entrance that he could get. That he found a tie, and set it up in the room to support a rock which could be seen in the roof overhead, and to prevent the rock from falling on him while at work. While he was at work, the rock fell on him, crushed his foot so that it had to be amputated, and otherwise injured him. Plaintiff stated that he knew the roof was dangerous, but did not suppose that the danger was immediate; that at the time of the accident he was expecting props to come in, and continued at work upon the request and promise of the foreman.

On the part of the defendant there was testimony tending to show that the company had furnished plaintiff with all the timber he needed, and that the injury was caused by the carelessness of plaintiff in failing to use these timbers to prop the roof of his room.

The jury returned a verdict in favor of the plaintiff for $1,999, and defendant appealed.

*Hill & Brizzolara,* for appellant.

The plaintiff did not make out a case.   56 Ark. 237; 68 Ark. 316; 58 Ark. 168; 150 Mass. 423; Wood, Mast. & S. § 378; 2 Bail. Per. Inj. M. & S. § 3117; 20 Am. & Eng. Ency. Law (2nd Ed.), 127; Shearm. & Redf. Neg. §§ 215, 217.   The rule of safe place for work does not apply.   67 Fed. 507; 92 Fed. 116; 111 U. S. 313; 58 Fed. 525; 65 Fed. 48.   There was no duty on part of appellant to warn the plaintiff.   39 Ark. 17; 58 Ark. 271; 74 Fed. 186; 50 Fed. 725; 20 Am. & Eng. Ency. Law (2nd Ed.), 94; Wood, Mast. & S. § 349.   The promise of the pit boss did not excuse the plaintiff.   2 Shearm. & Redf. Neg. § 215; 117 U. S. 621.   The failure of the company to furnish the timber not the proximate cause of the injury.   1 Shearm. & Redf. §§ 13, 27; 56 Ark. 386.   Appellee was guilty of contributory negligence.   Shearm. & Redf. Neg. §§ 62, 214; 20 Am. & Eng. Enc. Law (2d Ed.), 151; 59 Ark. 465; 66 Ark. 237.

*John E. Tatum, R. A. Rowe,* for appellee.

It was appellant's duty to warn and instruct appellee.   14 Am. & Eng. Enc. Law, 897; 2 Bailey, Per. Inj. § 2665.   Appellant was negligent in failing to furnish caps and props to safeguard Chandler's room.   96 Fed. 298; 121 Ill. 590; 12 Ill. 495; 97 Mo. 65; 59 N. E. 268.

RIDDICK, J., (after stating the facts).   This is an appeal from a judgment in an action by an employee of a mining company to recover damages from the company for an injury received by him while at work in its mine.   The evidence is very conflicting, but it is unnecessary for us to notice it further than to enable us to determine whether the case was properly submitted to the jury.

The plaintiff was injured by the fall of a rock from the roof of a room in the mine where he was at work digging coal.   If the roof had been properly supported by timbers, the rock would not

have fallen. It was the duty of the defendant company to furnish the miners in its employ with sufficient and suitable timbers, called "props" and "caps," to support the roof of the room in which they worked, and it was the duty of the miner to use these timbers, and see that the roof was properly supported. Plaintiff testified that the company failed to furnish him sufficient timbers in this instance, though he had repeatedly requested it to do so. He said that only two or three hours before the injury occurred he had requested the foreman of the company to have timbers sent to him. "He told me," said plaintiff, "to go ahead; that he would send me timbers in plenty time to put up; that he wanted that place drove through." Relying on this promise and request of the foreman, plaintiff says that he went ahead with his work, and was injured. This testimony of plaintiff was contradicted by witnesses for the defendant; but, the jury having found in favor of plaintiff, we will, for the present, assume that it is a correct statement of the facts.

Counsel for defendant contends that, if this be so, yet the evidence shows that plaintiff carelessly and wilfully exposed himself to a known danger, and for that reason he can not recover. It is doubtless true that, where the danger is so obvious and imminent that no one but a reckless person would, under like circumstances, expose himself to it, if the servant continues knowingly to expose himself to the danger, and is injured in consequence of his own recklessness, he can not recover, even though the master was also at fault. If one remains at work under a rock which he knows is liable to fall at any moment, his injury from the fall of the rock is a consequence of his own carelessness, and prevents a recovery on his part. But in this case, if the plaintiff knew that the rock was likely to fall if unsupported, yet it appears that he did attempt to support it by placing a tie under it. This support turned out to be insufficient, but the evidence does not so conclusively show that the danger to which plaintiff exposed himself was so imminent and plain that we can say as a matter of law it forbids a recovery, when we consider that there was evidence to show that he was requested to remain at work by the foreman of the company.

While the plaintiff had been at work mining coal for the company about six weeks previous to his injury, and knew that it was necessary to have the roof supported, and was aware that there was danger in an unsupported roof, yet it is probable that he did not consider his judgment concerning the condition of the roof so

good as that of the foreman of the mine, who advised him, so plaintiff says, to go ahead and continue the work. It was the duty of the company to have an experienced and prudent man as foreman in charge of its mine. The foreman should have been, and no doubt was, a man of judgment and of practical experience in the business of mining. He was put there for the purpose of supervising and directing the work, and it was quite proper and natural that a miner, especially one having only six weeks' experience in the business, should, to a large extent, defer to and rely upon the judgment of the foreman concerning the safety of the work in which he was engaged. When told by the foreman to go ahead with the work, that he would send him the props needed to support the roof in due time, plaintiff, so he says, obeyed his directions, and in consequence was injured. Under these circumstances and under this evidence, it is clear that the court can not say as a matter of law that the plaintiff was guilty of carelessness in working under an unsupported roof, for that was a question for the jury to determine.

If this was the only question presented, we should have little trouble in disposing of the case. In fact, if we felt certain that the jury found that the attention of the foreman was called to the dangerous and unsafe condition of the room, and that he was requested by plaintiff to furnish timbers with which to make it safe, but that, instead of doing so, he directed plaintiff to go ahead with his work in the room, promising to furnish the timbers in time, and that plaintiff, relying on this advice and promise of the foreman, remained at the work, and in consequence was injured as alleged, we should affirm the judgment, as on that theory of the case there is evidence to sustain it.

But the third, fourth and fifth instructions given by the court are, it seems to us, abstract and misleading, and may have led the jury to find for the plaintiff on an entirely different ground from that above mentioned. These instructions tell the jury, in substance, that the defendant assumed the duty of furnishing a reasonably safe place for plaintiff in which to work, and that, if plaintiff was without experience in mining coal, it was the duty of the company to instruct the plaintiff as to the dangers of his employment, and, if it failed to do so, and the plaintiff was injured in consequence of such failure, then the company is liable.

Now, while it is a well established rule that it is the duty of the master to furnish the servant a reasonably safe place in which to work, and if, through failure of the master to exercise ordinary

care in this respect, the servant is injured, the master is liable, yet it would be misleading to give that rule as a guide to the jury in this case, without calling their attention to the limitation of the rule made by the peculiar circumstances under which it must be applied in this case. For in this case the evidence shows that it was the duty of the servant to make his room safe by the use of timbers which the master was to furnish. The duty of the master to use due care to furnish a safe place for the servant to work would, under the circumstances here, be discharged by furnishing the servant an ample supply of suitable timbers with which to make the room safe, for the plaintiff was not injured in a passageway or place under the control of the master only, for the condition of which the master alone was responsible. He was injured in a room in the mine where he and his partner alone worked, and where, as they extended the room by digging into the walls thereof, they were, as a part of their duty both to themselves and their employer, to see that the roof of the room was kept properly supported. The company was to furnish suitable timbers for this purpose. It was to furnish the props and caps, and the plaintiff himself and his partner undertook by the use of them to support the roof and make the room safe. If the injury to the plaintiff arose from his own failure to use the material furnished by the company to make the room safe, he certainly has no right to complain of the company. The evidence on this point was conflicting, and, under these circumstances, we think it was to some extent misleading to tell the jury without qualification, as the court did in the third instruction, that "the defendant assumed the duty of furnishing a reasonably safe place for plaintiff in which to work, and safe appliances." This might be true of the passageways or other portions of the mine where the work of plaintiff required him to go, but it was not strictly true of the room in which plaintiff was injured, as we have shown, and for that reason the instruction should not have been given in that form without a further statement that, under the circumstances of this case, the master's duty as to providing a safe place was discharged by furnishing safe passage ways to the servant and the necessary timbers to safeguard his room.

But we think a still more serious defect in these instructions is that they tell the jury that, if the plaintiff was without experience in mining coal, it was the duty of the defendant to warn him of the dangers he was liable to encounter in the work; and if the defendant knew, or by the use of ordinary care could have ascer-

tained, that the defendant was without experience in mining coal, and failed to give him such warning, then defendant was responsible for any injury sustained by the plaintiff on account of such failure to warn. Now, while his statements on that point are not very clear, as may be seen by a reference to the statement of facts, yet if we take it as true that he was without experience in mining coal at the time he entered the employ of the defendant company, we must remember that he remained at work digging coal for about six weeks before he was injured. He was thirty-two years of age, and there is nothing to show that he did not possess at least ordinary intelligence. He was at work in a room with an experienced miner, and it is hardly supposable that he worked in the mine that length of time without gaining considerable experience in regard to the dangers and difficulties of the business. His testimony shows that he was fully aware of the necessity of keeping the roof supported, and of the danger to which an unsupported roof would subject those who worked in the room. He understood also the respective duties of himself and the company in respect to keeping the roof in a safe condition, that the company was to furnish the timbers for supporting the roof, and he and his partner were to place them in position. His only complaint is that the company failed to furnish him a sufficient quantity of these supporting timbers, and that he was induced by the foreman to remain at work, and in consequence of so doing was injured. The right of plaintiff to recover depended then on the question whether the company had failed to furnish him a sufficient quantity of timber to support and safeguard the roof of his room, and whether the injury which he received was due to the failure of the company and the request of the foreman that he should continue at work or whether it was due to his own carelessness. The testimony of plaintiff himself shows plainly that previous to his injury he had learned the necessity of keeping the roof properly supported, and knew that an unsupported roof was dangerous. As he had obtained this knowledge from some source, it was entirely immaterial whether the company did or did not instruct him about the matter at the commencement of his service. This being so, it seems to us that the instructions in regard to the duty of the company to warn an inexperienced servant of the dangers of the work were abstract and misleading. Decisions may no doubt be found in which such instructions have been approved, for under other circumstances they might be appropriate; but it is not safe to take the law as declared in one case

and apply it in another without a careful consideration of the circumstances of each case in order to determine whether it be applicable or not. In order to avoid confusion, statements of law to a jury must have reference to the evidence in the case and the issues they are required to decide. So, in order to determine whether instructions are proper, we must consider them in the light of the facts to which they are applied. Now, so far as we know in this case, the jury under the instructions may have found that the defendant discharged its duty to the plaintiff in respect to making his room safe by furnishing him an ample supply of suitable timbers for that purpose, and yet found against the company on the ground that the plaintiff was inexperienced, and that the company failed to warn him of the dangers of the business, and for that reason was liable for the injury suffered. The giving of these instructions was, we think, under the facts of this case, misleading and prejudicial to the defendant.

Again, the court, in instruction No. 10, told the jury that if the plaintiff requested the foreman to furnish him props, and the foreman promised to furnish them, then if the plaintiff relied on the promise of the foreman, and for that reason continued at his work, he did not assume the risk incident "upon the failure to furnish a sufficient amount of props to securely and safely prop the room where the plaintiff was working." But, conceding that he did not assume the risk incident upon the failure to furnish the props, it does not follow that he was not guilty of negligence in working under an unsupported roof; for the fact that the foreman promised to furnish the props necessary to support the roof did not justify the plaintiff in exposing himself to danger so obvious and imminent that no person of ordinary prudence would, under like circumstances, have exposed himself to it. As before stated, whether he was guilty of negligence in remaining at his work when there were no timbers on hand to support the roof is a question for the jury to determine from a consideration of all the circumstances of the case. A laborer working under a foreman or superintendent of a mine is, as a general rule, expected to obey the orders of such foreman in reference to the work, and would not be guilty of negligence in doing so unless the danger to be incurred thereby is so manifest and plain that no person of ordinary prudence would do so under like circumstances. If it is shown in this case that the plaintiff remained at work in obedience to the order of his foreman, the jury should take into consideration not only

the circumstances indicating danger, but the relative experience
and knowledge of the two men in reference to such work and the
danger to be apprehended, and determine from a full consideration
of all the circumstances whether plaintiff was guilty of careless-
ness in proceeding with his work, the question, as before stated,
being one of fact for the jury to decide. *McKee* v. *Tourtellotte*,
167 Mass. 69 ;*Schlacker* v. *Ashland Iron Co.* 89 Mich. 253; 20
Am. & Eng. Enc. Law (2d. ed.), 147; Wood's Master & Servant
(2d. ed.), § 387.

Having said enough to indicate our opinion upon the legal
questions involved, it is needless to discuss the instructions further.
For the error in the instructions referred to, the judgment is re-
versed, and a new trial ordered.