PATTERSON COAL COMPANY *v.* POE.

Opinion delivered January 21, 1907.

MASTER AND SERVANT—ASSUMPTION OF RISK.—Where a servant voluntarily proceeds with his work in the face of a danger of which he is fully aware, and which is one of the risks ordinarily incident to his employment, he is deemed to have assumed the risk, although he has made complaint to the master, who has promised to furnish him the means to avoid the danger.

Appeal from Sebastian Circuit Court; *Styles T. Rowe,* Judge; reversed.

*Joseph M. Spradling* and *Geo. S. Evans,* for appellant; *Geo. W. Dodd,* of counsel.

The verdict is not supported by the evidence. The rule is settled that when one enters the service of another he takes upon himself the ordinary risks of the employment in which he engages. If the servant, having sufficient intelligence and knowledge to enable him to see and appreciate the dangers to which he will be exposed, knowingly assents to occupy a place set apart for him by the master, and does so, he thereby assumes the risks incident thereto, and dispenses with the obligation of the master to furnish him with a better place. 68 Ark. 316; 56 Ark. 237; 57 Ark. 76; 48 Ark. 346; 53 Ark. 117; 39 Ark. 17; 20 Am. & Eng. Enc. of L. (2 Ed.), 124; *id.* pp. 128, 130, 131.

*S. F. Lawrence* and *John W. Goolsby,* for appellee.

The owner, agent or operator of a mine is required to keep a sufficient amount of timbers to be used by the miners to prevent the mine from caving, and also to deliver them at the place where the cars are delivered. Kirby's Digest, § 5352.

While it is true that where a person engages to work for another he assumes all the risks ordinarily incident to his employment, it is equally true that he does not assume the risk of any injury caused by the negligence of his employer.

*Joseph M. Spradling* and *Geo. S. Evans,* for appellant in reply; *Geo. W. Dodd,* of counsel.

The negligence of the master must be the proximate cause of the injury before the servant can recover on the strength of

the master's negligence.   20 Am. & Eng. Enc. of L. (2 Ed.), 55;
8 *id*, 561 ; 56 Ark. 279.

McCulloch, J.   Appellee was a coal miner, employed by
appellant in the coal mine operated by the latter in
Sebastian County, and instituted this action to recover damages
sustained by reason of appellant's negligence while at work in the
mine.   He was at work in one of the rooms of the mine when
the roof fell in on him, and he was severely injured by a falling
rock.   Negligence of appellant is alleged in failing to furnish
necessary timbers with which to prop the roof.   The jury re-
turned a verdict in favor of plaintiff, and the defendant appealed.

The defendant denied the allegations of negligence, and
pleaded that plaintiff's injury resulted from his own negligent
act, and also that the injury resulted from one of the ordinary
risks and dangers incident to his employment which he assumed.

The plaintiff was a coal miner of long experience, and was
well acquainted with his duties and the danger incident to the
work in which he was engaged.   The details of his injury, as
related by himself on the witness stand, are as follows: He was
at work in the mine digging coal when he was directed by the
pit boss to go to work in another room, the room in which he sub-
sequently received the injury.   He went to the new room as-
signed to him and first examined it, sounding the top with his pick,
and, finding only one or two props, he returned to the entry and
told the pit boss to bring some props for his use.   The latter
promised but failed to do so.   He worked in the room a portion
of that day.   This was on Monday, and, as operations in the mine
were suspended for a week, he did not resume work until the
following Monday.   On that day he returned to his work in the
room, and again called for props, which were again promised,
but none were furnished.   He said that the room was just as he
left it except that the three shots he had put in on the former day
had been fired.   He went to work digging down the coal, and,
after having worked from about seven o'clock in the morning
until some time during the afternoon, when he was on his knees
"taking down draw slate" a rock fell down on him from the top
and inflicted the injury.

The seam of coal at this place was about four feet thick,
and between it and the solid rock above there is a thin stratum

of slate, called "draw slate," which varied in thickness. The draw slate usually falls down of its own weight when the coal is removed, and in case it does not fall the miner picks it down and removes it before putting in props to hold the roof of solid rock.

Plaintiff states that if he had had the props he could and would have put them in as he took down the draw slate, and could thereby have prevented the falling in of the roof. It is therefore clear that the plaintiff's injury resulted from the failure to prop the roof so as to prevent the same from caving in.

A statute of this State provides that "the owner, agent or operator of any mine shall keep a sufficient amount of timber when required to be used as props, so that the workmen can at all times be able to secure the said workings from caving in, and it shall be the duty of the owner, agent or operator to send down all props when required and deliver said props to the place where the cars are delivered." Kirby's Digest, § 5352.

It was the duty of the miner to use the props so as to make safe the room where he worked. The plaintiff was an experienced miner, and knew the danger of rock falling from an unsupported roof, and was fully advised of his duty in making the place of his work safe. The fact that he repeatedly called for props shows that he fully realized the necessity for their use and the danger of proceeding with his work without propping the roof. He says he observed that it was insufficiently propped, and he would have put in props as he took down the draw slate if he had had them. The danger was manifestly one that was incident the work in which he was engaged. It was the duty of the master to furnish the props, but the duty of the servant to put them in and to exercise his own judgment in determining when they were needed. Was it a risk which he assumed by proceeding with his work?

The question of risks assumed by an employee as an incident to his work received much attention in the case of *Choctaw, Oklahoma & Gulf Rd. Co.* v. *Jones,* 77 Ark. 367, and the subject is treated at length in the opinion of the court. In that case it was held that the servant did not assume the risk because it was not one of the ordinary risks of the employment, but was an unusual one brought on by the negligence of the master; and because the servant was proceeding in his work under direct command of the

foreman and under an implied assurance that it was safe to do so. The court there said: "In the application of the doctrine of assumption of risks a distinction must be also made between those cases where the injury is due to one of the ordinary risks of the service, and where it is due to some altered condition of the service, caused by the negligence of the master. The servant is presumed to know the ordinary risks. It is his duty to inform himself of them; and if he negligently fails to de so, he will still be held to have assumed them."

Now, in the case at bar it was the duty of the plaintiff to discover the danger and guard against it, and it is obvious that he realized the danger, for he called for material to use in guarding against it. The fact that he proceeded with his work without waiting for the props renders it no less certain that he was aware of the risk which to some extent attended the situation, but rather manifests his willingness to assume the risk. While it is true that the servant is never deemed to have assumed risks brought about by the negligence of the master, yet where the risk is one ordinarily incident to his employment, and he voluntarily proceeds with his work in the face of a danger which he is aware of and fully realizes, he is deemed to have assumed the risk and can not recover.

In *Emma Cotton Seed Oil Co.* v. *Hale,* 56 Ark. 232, this court said: "It is well settled that when one enters the service of another he takes upon himself the ordinary risks of the work in which he engages. * * * If, having sufficient intelligence and knowledge to enable him to see and appreciate the dangers to which he will be exposed, he knowingly assents to occupy a place set apart for him by the master, and he does so, he thereby assumes the risks incident thereto, and dispenses with the obligation of the master to furnish him with a better place. It is then no longer a question of whether such place could not with reasonable care and diligence be made safe. Having voluntarily accepted the place occupied by him, he can not hold the master liable for injuries received by him because the place was not safe." *St. Louis & S. F. R. Co.* v. *Marker,* 41 Ark. 542; *Railway Co.* v. *Davis,* 54 Ark. 389; *Southwestern Telephone Co.* v. *Woughter,* 56 Ark. 206; *Arkadelphia Lumber Co.* v. *Bethea,* 57 Ark. 76; *Brinkley Car Works & Manufacturing Co.* v. *Lewis,* 68 Ark.

316; *Paule* v. *Florence Min. Co.*, 80 Wis. 350; 1 Labatt on Master & Servant, § § 260, 266, 267.

The case of *Kansas & Texas Coal Co.* v. *Chandler*, 71 Ark. 518, presents a state of facts to some extent similar to those in the case at bar, but the court disposed of that case and reversed a judgment rendered against the mine owner for alleged negligence in failing to furnish props, without laying any stress upon the question of assumed risk. There was, however, one important and controlling distinction between that case and this, in that the servant proceeded with his work of digging coal under an unsupported roof at the direct command of the foreman, and upon the implied assurance that it was safe to do so. The attention of the court seems to have been directed entirely to the question of contributory negligence, and the opinion contains no discussion of assumed risk. We find nothing in that opinion in conflict with the views herein expressed.

We are therefore of the opinion that, according to the plaintiff's own statement of the facts of the case, his injury resulted from one of the ordinary dangers of his employment, the risk of which he voluntarily assumed, and that he is not entitled to recover damages from his employer, notwithstanding the failure of the latter to furnish props for the room.

Reversed and remanded.