MAMMOTH VEIN COAL COMPANY *v.* BUBLISS.

Opinion delivered July 22, 1907.

1. MINES AND MINING—NEGLIGENCE.—Where a miner, while in the exercise of due care, is injured by reason of the fact that the mining company after request failed to furnish sufficient or suitable timbers with which to prop his roof, his injury is due to the company's negligence, and it should respond in damages. (Page 572.)

2. SAME—CONTRIBUTORY NEGLIGENCE.—If a miner remains at work under a rock which he knows is liable to fall at any moment, and is injured by its fall, his injury is a consequence of his own carelessness and prevents a recovery on his part. (Page 573.)

Appeal from Sebastian Circuit Court; *Styles T. Rowe,* Judge; reversed.

STATEMENT BY THE COURT.

The plaintiff, Charles Bubliss, an employee of the defendant, was injured while at work in the mine of defendant. Bu-

bliss was an experienced miner, over fifty years old, and had worked in mines for nearly forty years. At the time of his injury he was at work "driving an entry or passage way in the mine." He had worked at this entry for several months, and had driven it some fifty yards or more into the mine.

For doing this work Bubliss was paid by the company at the rate of $2.13 per yard for driving the entry, in addition to being paid for the coal taken out. Bubliss and his room mate were left to manage the work in accordance with their own judgment. At the end of every two weeks the work was measured by the foreman, and then the portion of the entry measured was turned over to the company. There were two veins of coal at the place where Bubliss was working, an upper and lower vein, each about four feet thick with eight or ten inches of earth between them. At the time of the injury Bubliss had driven the entry into the upper vein some ten or twelve feet further than the lower vein. Bubliss testified that he had asked for timbers to support the roof, and there was testimony tending to show that the defendant was guilty of negligence in failing to furnish them, and testimony to the contrary. Though the timbers were not furnished, Bubliss proceeded with his work and was drilling a hole in the face of the entry for the purpose of blasting or firing shots when a rock weighing several hundred pounds fell from the roof and injured him. The plaintiff brought an action against the company to recover damages for the injury. On the trial he was cross-examined as to his knowledge of the danger to which he exposed himself by working under an unsupported roof. He testified that he examined the roof in the morning when he commenced work, and that about eleven o'clock he examined it again. The examination then proceeded as follows:

"Q. Did you find it all right? A. I found it all right, but I would rather have props to be sure. I didn't see no rocks at all then, but it sounded a little loose, and I didn't want to give it a chance. Q. It was a little loose then? A. Yes, sir. Q. Was it loose to the extent that you could run your finger in the crack? A. No, sir; you couldn't see any sign of loose rock whatever. Q. Why did you think it was a little loose? A. A miner feels by the pick, by the sound of the roof. Q. You put that test to it? A. Yes, sir. Q. And that showed it was

a little loose? A. Yes, sir; a little loose. Q. When those rocks get a little loose, anybody knows they will fall? A. Sometimes they don't; no, sir. Q. From the time they get loose until they fall they are likely to fall at any moment, aren't they? A. Not always. Q. It was what you call a pot slip, wasn't it? A. Yes, sir. Q. Is'nt a pot slip when a break goes around a considerable rock? A. No, sir; you see a smooth top all the way over. Q. Can't you tell there is a break on one edge or the other? A. No, sir. Q. The only way you can tell is by the pick test that you have described? A. That is about all. Q. Now when the pick test is made, and you find it a little loose, you can't tell when it will fall? A. No, sir. Q. And it may fall at any moment? Since you can't tell when, it may fall at any moment? A. Yes, sir. Q. After you put the pick test to that and saw it was loose, did you tell, or could you tell, how thick the rock was that was going to fall? A. No, sir. Q. Now, when you found a loose rock in that way, it was your duty to pull it down?" Attorney for plaintiff: "He hasn't said he found a loose rock." Witness: "No, sir; I didn't say it."

"Q. In answer to the question of your attorney, Mr. Rowe, you say that you had not said that you found a loose rock? A. No, sir; I seen a rock, and I went to find out whether it was solid or not. Q. And what did you find? A. That it needed timber. Q. That it wasn't solid? A. That it wasn't quite solid. Q. You said it wasn't solid, and that the pick test was the only test that could be applied, and that test showed that it wasn't solid? A. Yes, sir."

The plaintiff was re-examined by his own counsel on the point as to whether the roof appeared to be safe, and, on objection being made to the question as leading, the presiding judge said to the witness: "Tell what you said about how the roof appeared, whether or not it showed any sign of any falling rock? A. I sounded the rock, and found it was necessary to timber the roof, and ordered the timber right away, and didn't get it, and I expect the rock got looser, and if I had known the rock was loose I wouldn't have worked; but I thought I would get the timber, and I hurried on up and waited a little

too long. Of course, if I had seen the rock was loose, I would have quit anyway."

Counsel for plaintiff then asked him:

"If you had seen any danger from the roof after examining it, you would have quit? A. Yes, sir."

On objection being made to this question counsel for plaintiff said to the witness: "Just state to this jury in your own way whether or not you saw any danger from that rock falling?" Objection was made to this, but the witness answered: "I positively say that she was sounding a little kind of hollow, but not dangerous enough to keep me from working a little time until timber came. I went to work and told my buddy to order some timber right away. * * * I ordered timber, and the timber didn't come in due time. It was about two o'clock when the rock fell and I got the injury. If the timber come in due time, I would'nt be hurt."

Q. "State to the jury whether or not, if you had seen any immediate danger of that roof falling, you would have worked there? A. No, sir, I wouldn't have worked there, * * * If I seen any danger then, like I said a while ago, I would not have worked under it, but I ordered the props to be sure and secure myself anyhow."

The plaintiff was then re-cross examined. Q. "You testified a while ago, as I understand you, that when you made the test you found that the rock showed that it was loose; the pick test showed that the rock was loose; how much loose you didn't know, but it showed it was some loose? A. Yes, sir; I have said that. Q. The pick test showed that? A. Yes, sir; therefore I ordered the timber right away. Q. Then you also said that nobody, no matter how good an expert miner he was, could tell, when a rock was loose in that way, how quick it would fall? A. May be some could; I couldn't. Q. And, so far as you know, no one could tell? A. I don't know. Q. But so far as you know? A. I couldn't tell whether it was going to fall or not. Q. And you couldn't tell how quickly it would fall either? A. No, sir. Q. As a matter of fact, Mr. Bubliss, those pot slips are more likely to fall without any warning or notice whatever than any other kind of slips aren't they? A. Yes, sir."

The jury returned a verdict in favor of the plaintiff for $300 damages; and judgment was rendered accordingly. Defendant appealed.

*Read & McDonough,* for appellant.

Under appellee's own testimony, his own negligence contributed to the injury, and he can not recover. He assumed the risk.   81 Ark. 343; 90 S. W. 300.

*Robert A. Rowe* and *A. J. Burk,* for appellee.

1.   The question of contributory negligence was for the jury under proper instructions from the court, and their verdict is conclusive.   15 Ark. 540; *Id.* 403; 23 Ark. 61; 14 Ark. 202; 17 Ark. 385; 19 Ark. 671; 24 Ark. 251; 21 Ark. 306; 67 Ark. 399.

2.   The duty of the employer to provide a reasonably safe place for the employee to work in is especially applicable to mining operations.   156 Mo. 234; 75 Mo. App. 177; 89 N. W. 98; White, Mines & Min. Rem. § 448.

The duty to properly timber can not be so delegated as to avoid liability from unsafe roofs from want of timbers.   196 Ill. 584; 63 N. E. 1079.   Mine employee has the right to presume that the owner has complied with his duty to keep reasonably safe entries for ingress and egress.   10 Am. Neg. Rep. 445.   See also 100 Fed. 45; 105 Cal. 77; 5 Col. App. 321; 146 Ill. 603; 38 W. Va. 273; 4 Utah, 468; 90 Va. 249; 101 Tenn. 476; 159 Pa. St. 403; 89 Mich. 253; 156 Mo. 232.   Where the negligence consists in violation of a statute for the safety of employees, see 150 Mass. 125; 122 Ill. 279; 185 Ill. 413; 20 Am. & Eng. Enc. Law, 59; 97 Mo. 62.   And the plaintiff's knowledge would not defeat recovery.   *Id.*

3.   Appellee can not be held guilty of contributory negligence unless it be shown that he knew at the time that there was immediate danger of the roof falling.   Risks resulting from the master's negligence are not assumed by the servant.   1 Labatt, Master & Servant, 4.   The company's promise to repair, under the facts in evidence, leaves the risk upon it.   2 Bailey, Pers. Inj. § 3073.

RIDDICK, J., (after stating the facts.)   This is an appeal by the Mammoth Vein Coal Company from a judgment rendered in favor of Charles Bubliss against it for $300 as damages for

an injury to plaintiff caused by the fall of a rock in the mine of the defendant. The plaintiff was a miner, and at the time of his injury was at work driving an entry or passageway in the mine. This entry where plaintiff was at work was unfinished, and had not been turned over to the company, and was not being used as a passageway. The work was being done by himself and partner according to their own judgment, and they had the same control over the place at which they were at work as a miner has over a room in which he works. This is the view of the case adopted by the trial judge, and the one we take, though the facts about this matter were not brought out very clearly. Plaintiff at one point of his cross-examination stated that it was the duty of the company to "timber" the entry and make it safe. That was no doubt true of entries and passageways after they are finished and used as such, but it was not true of this part of the entry where plaintiff received his injury, for that had not been finished, and was not being used as an entry, but as a place for work. Plaintiff himself was making the entry and mining the coal therein; and while he was doing that, it was no more than the room or place where he worked. The case was tried on this theory, and the conduct of the plaintiff shows that he took this view of the matter, for when he concluded that the roof needed propping he did not request the company to prop the roof but to send props to enable him to prop it.

The statute made it the duty of the company; when requested, to furnish the plaintiff sufficient props and caps and other suitable timbers with which to prop and safeguard the roof of the entry where he was at work (Kirby's Digest, § 5352), and it was the duty of the plaintiff to use the timbers and make the roof safe. The jury found, and the evidence tends to show, that the company failed to furnish the timbers as required by the statute, although requested to do so by plaintiff. It was therefore guilty of negligence, and must be held responsible for any injury caused thereby, unless the plaintiff was himself guilty of negligence contributing to his own injury. As before stated, the law requires mine owners to furnish sufficient props and timbers with which to safeguard the roofs above where they work. If they fail to do that, and the miner is put to an elec-

tion whether he will go ahead and risk the danger or quit work, and he concludes to go ahead and work, it becomes a question as to whether in so doing he acted with due care or recklessly exposed himself to an obvious and imminent danger. If, while in the exercise of due care, he is injured by reason of the fact that the company after request wilfully failed to furnish sufficient or suitable timbers with which to prop the roof, his injury is then due to a violation of the statute on the part of the company, and they should respond in damages. *Kansas & Texas Coal Company* v. *Chandler,* 71 Ark. 518. On the other hand, if the danger is obvious and imminent, it is nothing but recklessness for him to expose himself to it, and the law will not permit him to recover damages for an injury directly due to his own lack of ordinary prudence. *Coal Company* v. *Estievenard,* 53 Ohio St. 43.

Now, we have set out the main portion of the testimony of the plaintiff bearing on the question of the nature of the danger to which he exposed himself, and his knowledge thereof, and we think it shows that he was guilty of want of ordinary care. It is true that he says that he would not have worked there if he had known that it was dangerous, but he admits that when he tested the rock with the pick, which he says was the best way to test it, the pick test showed that the rock was more or less loose, and that no one could tell how soon or when it would fall. We said in a recent case that "if one remains at work under a rock which he knows is liable to fall at any moment, his injury from the fall of the rock is a consequence of his own carelessness, and prevents a recovery on his part." *Kansas & Texas Coal Company* v. *Chandler,* 71 Ark. 578. No prudent man should expose himself to such a risk rather than wait until he can secure props with which to secure the roof from falling. To work under a rock after discovering that it was liable to fall at any moment was knowingly to occupy a position of great and palpable danger when there was no occasion to take such a risk, and the injury of plaintiff was the direct result of his reckless exposure to danger, and we are of the opinion that the court should have directed a verdict for defendant. *Kansas & Texas Coal Company* v. *Chandler,* 71 Ark. 518; *Coal Company* v. *Estievenard,* 53 Ohio St. 43; *Victor Coal Company* v. *Muir,*

20 Colo. 320; _Sugar Creek Mining Company_ v. _Peterson_, 177 Ill. 324; _Christner_ v. _Coal Company_, 146 Pa. St. 67; White's Mining Remedies, § 463; 20 Am. & Eng. Enc. Law (2 Ed.), 140.

The same conclusion was reached in the case of _Patterson_ v. _Poe_, 81 Ark. 343, though the decision there was based on the ground that the plaintiff assumed the risk. In cases like this case and that of _Patterson_ v. _Poe,_ where the plaintiff exposes himself to a danger that is obvious and imminent, it is not of much practical importance whether the case is disposed of on the ground of assumed risk or contributory negligence. For, as was pointed out by Judge Taft in _Narramore_ v. _Cleveland,_ 96 Fed. 298-304, "assumption of risk and contributory negligence approximate when the danger is so obvious and imminent that no ordinarily prudent man would assume the risk therefor." The opinion by Judge Taft in that case contains a full discussion of the principles underlying the doctrines of assumption of risk and contributory negligence and their application in cases where the servant undertakes to hold the master responsible for a failure to perform a statutory duty. Assumption of risk and contributory negligence were also discussed by this court in the recent case of _Choctaw, O. & G. R. Co._ v. _Jones, 77_ Ark. 367. There is of course a clear distinction between these two doctrines, though the courts have not always kept them in mind; but it is not necessary to discuss the question here, for in this case the application of either rule defeats the plaintiff. The decisions of the courts not only of this but of other States are practically unanimous in holding that contributory negligence is a good defense to an action by a servant to recover damages for injuries against his employer based on the failure of the master to perform a statutory duty. _Kansas & Texas Coal Company_ v. _Chandler,_ 71 Ark. 518; _St. Louis S. W. Ry. Company_ v. _Dingman,_ 62 Ark. 245; _Narramore_ v. _Cleveland,_ 96 Fed. 298; _Coal Company_ v. _Estievenard,_ 53 Ohio St. 43; _Hamman_ v. _Central Coal & Coke Company,_ 156 Mo. 232. In the case last cited the judgment against the company was sustained, although the miner continued at work after the company had failed to furnish him props. But, to quote the language of the court, "the roof where the accident happened was examined by one of the miners with his pick, which was the usual and proper way

to examine the roof and test its strength, within an hour prior to the accident and found to be safe to work under." Under these circumstances, the court said that the question of whether the plaintiff in going ahead with his work acted with due care was a question for the jury. This Missouri case is one of the strongest cases in favor of the contention of plaintiff that we have found, but in that case the pick test showed that the roof was safe, while in this case that test showed that the roof was more or less loose, and that it was liable to fall at any time. As we have said, the plaintiff, in remaining at work under the roof after making this discovery, was guilty of negligence that directly brought about his injury. As this contributory negligence was shown by his own testimony, there was no need to send the case to the jury.

Judgment reversed and cause remanded for a new trial.