## SUBIACO COAL COMPANY *v.* KRALLMAN.

### Opinion delivered April 19, 1920.

1. APPEAL AND ERROR—OBJECTIONS TO EVIDENCE.—In an action for personal injuries, where objection was made to opinion evidence of a physician based in part upon statements made to him by the plaintiff, the Supreme Court can not determine whether the evidence was competent or not where the plaintiff's statements are not developed.

2. MASTER AND SERVANT—DUTY OF MINE OPERATOR TO FURNISH PROPS.—Kirby's Digest, § 5352, imposing on mine operators the duty to furnish prop timbers when requested, *held* broad enough to impose the duty on defendant to furnish crossbars or other timbers necessary to secure the working place of plaintiff upon notice to the proper party.

3. MASTER AND SERVANT—DUTY OF MINER TO FURNISH PROPS—INSTRUCTIONS.—In an action by a coal miner for personal injuries,

instructions as to the master's duty to furnish props *held* not
to deprive the master of the right to lay out and develop the
mine by permitting an employee to demand that props be placed
where they would interfere with the installation; another instruc-
tion having submitted the defendant's theory.

4. TRIAL—CONFLICTING INSTRUCTIONS.—In an action by a coal miner
for personal injuries, an instruction given at plaintiff's instance
permitting recovery if plaintiff worked under a rock by order
of the pit boss, and in reliance upon his superior judgment, *held*
not to conflict with an instruction permitting recovery if plaintiff
demanded and defendant failed to furnish props to make the
work place safe.

5. MASTER AND SERVANT—ASSUMED RISK.—Where plaintiff sounded
the roof, saw it was dangerous and notified the pit boss to prop
it, but he also sounded it and pronounced it safe, and ordered
plaintiff to work there, which he did, relying on the superior
knowledge of his boss, he did not, as a matter of law, assume
the risk as a patent danger.

6. TRIAL—REPETITION OF INSTRUCTIONS.—Where all of defendant's
defenses were covered by instructions given, it was not error to
refuse to again instruct on the same subject.

Appeal from Logan Circuit Court, Northern Dis-
trict; *James Cochran*, Judge; affirmed.

*James B. McDonough*, for appellant; *Rhyne & Rog-
ers*, of counsel.

1. The court erred in admitting the testimony of
Doctor Higdon, as it was based in part upon plaintiff's
statements to him. 206 Fed. 765; 45 Me. 392; 27 Kan.
463; 76 Wis. 35; 44 N. W. 1092; 132 Mass. 439; 65 Ohio
St. 403; 62 N. E. 1047; 68 N. W. 148; 234 Ill. 564; 194
Fed. 393; Lawson on Expert & Op. Evidence, 162; 136
Ark. 246; 208 Ill. App. 67; 198 S. W. 396; 160 N. W. 372;
148 Pac. 764; 95 Kan. 343; 206 S. W. 677.

2. The court erred in its instructions, especially
No. 2. The law upon which this suit was based is Kir-
by's Digest, § 5352, and Kirby & Castle, § 6329. No. 2
is confusing and does not clearly define the issues and
assumes that the conduct of the pit boss was negligent,
and submits to the jury the question whether or not the
place would have been made safe by props and cross-

bars. There was also error in No. 1. 110 Ark. 188; 88 *Id.* 454; 4 Crawford's Digest, p. 4994; 101 Ark. 205.

3. Defendant's request No. 4 should have been given. 3 Labatt on Master & Servant, § 930.

4. A directed verdict should have been given for defendant, as the evidence wholly fails to show negligence on part of the pit boss. 95 Ark. 291. Plaintiff knew and appreciated the danger and assumed the risk. 125 Ark. 597; 56 *Id.* 206.

*Sid White,* for appellee.

1. Doctor Higdon's testimony was properly admitted. 62 N. E. 1047; 52 Conn. 309; 38 Mich. 544; 87 Ark. 243; 204 Ill. App. 576; 162 Pac. 823.

2. Instruction No. 2 states the law, and it was not error to give it. 131 Ark. 562.

3. Appellee did not assume the risk. It was a question for the jury and was properly submitted to them, and their verdict is conclusive. 211 S. W. 366.

HUMPHREYS, J. Appellee, a coal miner, instituted suit against appellant, owner and operator of a coal mine, in the circuit court of Logan County, Northern District, to recover damages for injuries received by a falling rock from the roof over the working place of appellee, in appellant's coal mine. The basis of the suit consisted in the alleged negligent failure of appellant to furnish material to prop the roof and make it safe.

Appellant filed answer, denying the allegations of negligence, and, by way of additional defense, pleading that appellee assumed the risk. The cause was submitted to a jury, upon the pleadings, evidence adduced and instructions of the court, upon which a verdict was returned and judgment rendered against appellant for $1,750, from which judgment an appeal has been duly prosecuted to this court.

The facts, in so far as they relate to the material issues involved in this appeal, are, in substance, as follows: Appellee, an experienced coal miner, was employed by appellant in its coal mine, where he was in-

jured on August 15, 1918, by a falling rock from the roof of his working room, while engaged in driving an air course. It was appellee's duty to examine his own working place, and, if the roof was dangerous, to call for props and make it safe before working in it. Pursuant to his duty, he examined the roof before beginning to work, concluded it was in a dangerous condition and would fall unless propped, so he told the driver to tell the pit boss to come and bring some props. He then waited until the pit boss came. The pit boss came, but brought no timbers with which to prop the roof. At this point in the history of the case, there is a sharp conflict between the testimony of appellee and the pit boss, Al Starns.

Appellee testified that he told the pit boss the roof looked dangerous and asked him to sound it; that the pit boss sounded it and said it was not bad; that he declined to work unless props and crossbars were placed to make it safe; that no props or crossbars were on the ground; that the pit boss ordered him to go in and load the coal; that, in response to the orders, he proceeded to load the coal in the pit car, and, while so engaged, a rock about seven feet long, four feet wide and twelve inches thick fell from the roof upon, and very severely and permanently injured his hip and back; that he would not have gone to work without supporting the roof unless the pit boss had ordered him to do so.

Al Starns, the pit boss, testified that he did not sound the roof; that he told appellee a pump was to be installed in the place he was working and that props and crossbars would be in the way of the pump; that before proceeding with his work to take down the large rock which rendered the roof dangerous; that, in disobedience to his order, appellee entered the room and began loading coal without first removing the rock, which fell and injured him.

After the injury, appellee was extricated, carried out of the mine and placed upon a truck. Doctor Higdon was called to treat him, and observed the nature of the injury and suffering of appellee resulting from it. Ap-

pellee was moved from the mine to his home, and, the next day removed to the hospital at Fort Smith, where he remained for several weeks. After being brought back from the hospital to his home, he remained in bed for two months under the treatment of Doctor Higdon. During that period, the doctor again observed the character of the injuries and the extent of them. According to his opinion, appellee suffered intense pain during the period of treatment and was permanently injured. The opinion held by Doctor Higdon was related to the jury on direct examination, without objection. On cross-examination, Doctor Higdon testified as follows:

"Q. You base your opinion upon what he told you, as well as upon the examination you made?

"A. Some on what he told me and some on what I could see.

"Q. You did not see any bruises on him?

"A. Yes, sir; quite a lot of bruises on him when I first examined him.

"Q. You refer to his suffering; you based that upon what he told you?

"A. Not altogether."

At the conclusion of the cross-examination, appellant moved to exclude the testimony of Doctor Higdon on the ground that his opinion was based, in part, on statements made to him by appellee, and the refusal of the court to exclude it is assigned as reversible error. It will be observed that neither the statements themselves nor the time and circumstances under which made, were developed. Without knowing what statements appellee made to his attending physician during his illness, as well as the time and circumstances under which made, it is impossible to determine whether such expert opinion was competent under the following rule heretofore approved by this court:

"A medical expert may base his opinion upon a clinical history of the case under consideration, and, in order to make his testimony intelligible, he may testify to the observations that he made, and also as to what his patient

said to him in describing his bodily condition and the character and manifestations of his sickness, pains, etc. The reason for this rule is that the physician must oftentimes of necessity take into consideration such statements in reaching a conclusion as to the physical condition of the patient, and the nature and extent of his malady or injury; and hence, the rule being founded on such necessity, it has been declared that it must be applied with caution, and not extended beyond the reason of necessity upon which it rests. It has been declared, however, that the mere statements made by a person as to his sufferings, pain, etc., which statement was made for the sole purpose of furnishing the expert with information on which to base an opinion, is not admissible, and that the witness, in testifying to what he has heard and observed, is confined to exclamations, shrinkings and other expressions which appear instinctive, intuitive and spontaneous.'' *Biddle* v. *Riley,* 118 Ark. 206; *Bush* v. *Brewer,* 136 Ark. 246.

It is contended that the court committed reversible error in giving instruction No. 2, requested by appellee. The correctness of the instruction is challenged upon several grounds. It is said that it enlarged the statutory duty of mining companies to furnish props to properly secure the working place of miners. The statute referred to is section 5352 of Kirby's Digest, and is as follows: ''The owner, agent or operator of any mine shall keep a sufficient amount of timber when required to be used as props, so that the workmen can at all times be able to properly secure the said workings from caving in, and it shall be the duty of the owner, agent or operator to send down all such props when required and deliver said props to the place where cars are delivered.''

The instruction was broad enough to impose the duty on appellant to furnish crossbars or other timbers necessary to secure the working place of appellee upon notice to the proper party, and, if not warranted under the statute, was, of course, erroneous. The correctness of this instruction must depend upon the proper construc-

tion of the statute. The statute was interpreted in the case of *Mammoth Vein Coal Company* v. *Bubliss*, 83 Ark. 567, to mean that it was the duty of such companies to furnish all suitable timbers with which to prop and safeguard the roof of the entry where the employee was at work. The instruction did not, therefore, fix a broader duty upon appellant than the statute in question. It is also said that instruction No. 2, as well as other instructions, deprived the operator of the mine of the right to lay out and plan its development and operation by permitting an employee to demand that props and crossbars be placed where they would interfere with the installation of a pump. This was not the effect of the instructions, because the court told the jury, on its own motion, that if the pit boss directed appellee to take the rock down before he began to work and was injured by reason of disobeying the order, and not by reason of appellant failing to furnish props, it was the jury's duty to find for appellant.

Again, it is contended that appellee's instruction No. 2 is in direct conflict with instruction No. 1, given on the court's own motion, because appellee's No. 2 permitted a recovery if appellee worked under the rock by order of the pit boss, relying at the time upon his superior judgment as to the safety of the place; whereas, the court's No. 1 permitted a recovery if appellee demanded, and appellant failed to furnish him, props and crossbars to make his place safe. We see no conflict or inconsistency between the two theories and no reason why a recovery might not be based upon either if the evidence warranted it. There is substantial evidence in the record tending to show the appellee sent word by the driver to the pit boss to come and bring props, and that, after the pit boss came, he insisted on having props and crossbars with which to support the roof. There is also substantial evidence in the record tending to show that the pit boss examined the roof, pronounced it safe and ordered appellee to work, and that appellee would not have entered the room without the advice and direction of the pit boss.

There being substantial evidence to support either theory, it was proper to instruct the jury as to both grounds for recovery.

Appellant insists that the undisputed facts in the case showed that appellee assumed the risk incident to the employment, and, for that reason, the court committed reversible error in refusing to peremptorily instruct the verdict for it. It is true that appellee examined the roof and concluded it was dangerous, but it is also true that the evidence tended to show that the pit boss sounded the roof, pronounced it safe and ordered appellee to proceed with his work, which appellee reluctantly did, yielding to the superior knowledge of the pit boss. Under this state of the testimony, it can not be said, as a matter of law, from the undisputed evidence, that the danger was so patent and observable that a man of ordinary and reasonable care would not have entered and begun to work at the command of his employer. Again, as to whether appellee assumed the risk, in returning to his work, was a question of disputed fact for determination by the jury, and that question was properly submitted by the court in plaintiff's requested instruction No. 2. It was, therefore, not error to refuse to peremptorily instruct a verdict for appellant on this ground.

It is also insisted that the court erred in refusing appellant's requests Nos. 2, 3 and 4. Appellant's defenses, aside from alleged assumed risk by appellee, were (1) that there were timbers on the ground sufficient to prop the roof; (2) that appellee disobeyed the order of the pit boss to take the rock down before he began to work; and (3) a denial that timbers were demanded, with which to make the roof safe, and a failure to supply them. Instructions 1 and 2, given by the court on its own motion, fairly presented these contentions to the jury. All of appellee's defenses being covered by these instructions, it was not error to refuse to instruct upon them again.

No error appearing, the judgment is affirmed.