JOHNSON *v*. MAMMOTH VEIN COAL COMPANY.

Opinion delivered November 9, 1908.

1. MASTER AND SERVANT—ASSUMED RISK AND CONTRIBUTORY NEGLIGENCE.—
Assumption of risk and contributory negligence are separate defenses; and while it frequently happens that there is no practical importance in distinguishing them, yet they rest upon different bases. (Page 247.)

2. SAME—DEFENSES OF ASSUMED RISK AND CONTRIBUTORY NEGLIGENCE.—
The defenses of assumed risk and contributory negligence are tested by the same standard when the danger is obvious, and the distinction between them in such case is more theoretical than practical. (Page 247.)

3. SAME—Assumption of risk is the voluntary contract of an ordinarily prudent servant to take the chances of the known or obvious dangers of his employment and to relieve his master of liability therefor, while contributory negligence rests on some fault or omission of duty on the part of the plaintiff but for which the injury would not have happened. (Page 248.)

4. MINES AND MINING—STATUTORY DUTY—ASSUMED RISK.—Where a mine owner, agent or operator neglected to furnish a sufficient amount of timber to be used as props in the mine, as required by Kirby's Digest, § 5352, the defense will not be open to him that the servant who was injured thereby assumed the risk arising from such neglect. (Page 249.)

5. SAME—CONTRIBUTORY NEGLIGENCE QUESTION FOR JURY WHEN.—Where the evidence does not clearly establish that the mine in which plaintiff was injured was in such defective condition for want of props that no man of ordinary prudence and care would work there, the question whether plaintiff was negligent in working there was properly left to the jury. (Page 257.)

Appeal from Sebastian Circuit Court, Greenwood District; *Daniel Hon*, Judge; reversed.

STATEMENT BY THE COURT.

Johnson brought suit against the Mammoth Vein Coal Company for a personal injury received in its mine; and, after hearing the evidence adduced, the circuit judge directed a verdict to be returned in favor of the defendant. The sole question on this appeal is whether the plaintiff's testimony presented such facts as would justify the case going to the jury. Johnson's testimony was to the following effect:

He was an experienced miner, working in room No. 2, east entry, of the mine of the Mammoth Vein Coal Company on the 5th of March, 1906. The room was approximately one

hundred and fifty feet long by twenty feet wide. It was properly secured on both sides to within fifteen or twenty feet of the face of the coal, the props being on both sides and in the middle. On the west side there were no props for fifteen or twenty feet of the face of the coal, and on the east side there were props to within eight or ten feet of it. Johnson was injured on Wednesday, and on the preceding Monday, when he finished his work, he called upon the boss driver for props to be placed in his room by the next morning. The boss driver was the proper person upon whom to make this demand, as it was his business to furnish props to the miners upon demand. Johnson wanted these props to place under the west side of his roof, as he had discovered that that side was drummy for a space of four to eight feet. A drummy condition of a roof is where the rock is loosened to some extent, and such condition is dangerous, and this fact was known to him.

Johnson had placed two shots, one on the west side and one on the east side of the room, and they had been fired, evidently after he had ceased work on Monday. He did not work on Tuesday, principally because he did not have the props. He demanded of the boss driver props again on Tuesday for Wednesday, and they were promised for that time. He also saw the pit boss, and had a promise from the pit boss that he would have the props on Wednesday; and, according to the custom of the mine, they should have been taken to him Wednesday morning on the first trip of the driver. The driver failed to bring them to him on that trip, and told him he had been unable to get them. After this default of the boss driver and the pit boss to furnish him props as demanded and as promised, Johnson continued to work on Wednesday until he was injured, which occurred sometime after the failure to bring the props. He worked on the east side of his room, under that part of the roof which was not drummy, and which he regarded as properly propped.

He tested the roof on Monday and again on Wednesday after the shots had been fired, and found it in the same condition that it was on Monday before the shots were fired. Four or five feet of the coal had been shot out on the west side by the firing of the shot there, and this would have some tendency to loosen the roof; but on sounding it in his opinion its condition had not been

changed. Had he received the props, he would have placed two or three on the west side six or eight feet from the face of the coal, and he would have considered that sufficient to have made that side safe. He did not consider that any were needed on the east side to make that side safe, as the props extended to within eight or ten feet of the coal on that side.

When the drummy part of a roof falls, it may fall without affecting the other part, or it might possibly bring down some of the adjoining roof with it. While mining on the east side, close to his shot, the drummy part on the west side fell and brought down some of the roof over him, which hit him on the head and shoulders and knocked him down, and in falling he stumbled over a pick handle which struck him in the groin. This fall over the pick handle ruptured him, and he has been permanently disabled thereby. When he fell, his light was put out, and he does not know how much of the roof fell.

At the conclusion of the evidence, the trial judge granted the motion of the defendant for a peremptory instruction, on the ground that under the decision of *Patterson Coal Co.* v. *Poe,* 81 Ark. 343, the plaintiff assumed the risk, and is not entitled to recover in the action. The plaintiff has properly brought the case here.

*C. T. Wetherby,* for appellant.

The peremptory instruction for defendant under the authority of *Patterson Coal Co.* v. *Poe,* 81 Ark. 34, should not have been given, because:

1. A master may not avail himself of the defense of assumption of risk where the injury results from his neglect of a duty imposed by statute. *Patterson* v. *Poe* should be overruled. 122 Fed. 836; 71 Ark. 518; Bailey on Personal Injuries, § § 3073, 3080-1-2; 48 Am. R. 669; 40 Ohio St. 148; 153 Ind. 107-113; 70 Pac. 310; 85 S. W. 679; 87 *Id.* 506; 61 N. E. 335; 156 Mo. 56; 200 Ill. 493; 66 N. E. 29; 111 Ill. App. 294; 94 *Id.* 74; 192 Ill. 41; 96 Fed. 298; 40 N. E. 725; Labatt on Master & Servant, c. 22, § § 423-4-5-9-30; 77 Ark. 867; 92 S. W. 244.

2. There was no contributory negligence, as plaintiff was working in a safe place where the danger was not obvious nor imminent to a man of ordinary prudence and care. 92 S. W. 244; 77 Ark. 367. and cases *supra.*

*Read & McDonough,* for appellee.

This case is controlled by *Patterson Coal Co.* v. *Poe,* 81 Ark. 343, and the court properly directed a verdict for defendant. 83 Ark. 571; 71 *Id.* 518; 53 Oh. St. 43. The case in 83 Ark. 571 refutes every argument and point of counsel on the questions of assumed risk and contributory negligence.

HILL, C. J., (after stating the facts.) This case is predicated upon section 5352 of Kirby's Digest and upon section 5350 as amended by the Acts of 1905, which sections are as follows:

"Sec. 5352: The owner, agent or operator of any mine shall keep a sufficient amount of timber when required to be used as props, so that the workmen can at all times be able to properly secure the said workings from caving in, and it shall be the duty of the owner, agent or operator to send down all such props when required and deliver said props to the place where cars are delivered."

"Sec. 5350: For any injury to persons or property occasioned by the willful violation of this act, or willful failure to comply with any of its provisions, a right of action shall accrue to any party injured for any direct damages sustained thereby; provided that, should death ensue from any such injury, a cause of action shall survive in favor, first, of the widow and minor children of such deceased; if there be no widow or minor children, then to the father if living, then to the mother; if no mother, then to the brothers and sisters and their descendants." (Acts of 1905, p. 569.)

Briefly stated, the facts are: Johnson found part of his room needed props; he thrice demanded them; the company failed to furnish them; with knowledge that they would not be furnished at that time, he continued to work and was injured by a falling roof. As will be seen from an examination of the foregoing statement, the facts of the case bring it within *Patterson Coal Co.* v. *Poe,* 81 Ark. 343. In that case, as in this one, the miner proceeded with his work without waiting for the props which he had requested, and which the mining company had failed to furnish him; and it was there held that "he was aware of the risk which, to some extent, attended the situation, but his continuance of the work manifested his willingness to assume that risk."

In the case of *Mammoth Vein Coal Co.* v. *Bubliss,* 83 Ark. 567, the facts were essentially the same as in *Patterson Coal Co.* v. *Poe,* but the court preferred placing the ground of the decision upon the contributory negligence of the miner in working in an obviously dangerous place, rather than to follow *Patterson Coal Co.* v. *Poe* in placing it upon the assumption of risk; and pointed out in cases like those two, where the plaintiff exposes himself to a danger that is obvious and imminent, it is not of much practical importance whether the case is disposed of on the ground of assumed risk or contributory negligence. This case is memorable in the court as the last judicial work of the late Mr. Justice RID-DICK.

Since the subject was reviewed in the Bubliss case, the soundness of the decision in the Patterson-Poe case has been questioned in the consultation room; and now it has been questioned at the bar in the instant case. The circuit judge properly directed a verdict for the defendant company on its authority. In view of this doubt, the subject has been carefully examined and fully discussed in order to determine whether to follow this case or disapprove it.

Assumption of risk and contributory negligence are separate defenses; and while it frequently happens that there is no practical importance in distinguishing the two where the same state of facts would make out a defense, whether called by the one name or by the other, striking instances of which are found in the Bubliss and Poe cases; yet they rest upon different bases, and each should be approached from a different viewpoint. However, where the danger is obvious, the two defenses are tested by the same standard in that particular, and then the differences are more theoretical than practical. This is pointed out in *Choctaw, O. & G. Rd. Co.* v. *Jones,* 77 Ark. 367; *St. Louis, I. M. & S. Ry. Co.* v. *Mangan,* 86 Ark. 507; and by Judge Taft in the Narramore case, hereinafter referred to.

There is a class of cases where the distinction is vital, and this case happens to be such an one; for, as will be seen in the discussion later on, it presents a question of fact as to whether the plaintiff was guilty of contributory negligence. Hence, the case can not be turned, as a matter of law, upon contributory negligence. But the facts make out a case of assumption of risk

for the master's breach of the statute above quoted if such breach is the subject-matter of an assumption of a risk by the servant in continuing in the service with knowledge of the master's breach of said statute.

In the beginning of this discussion, it may be well to point out the differences between the two defenses. In *St. Louis Cordage Co.* v. *Miller,* 126 Fed. 495 (s. c. 63 L. R. A. 551), Judge Sanborn, speaking for the Circuit Court of Appeals for this circuit, said: "Assumption of risk is the voluntary contract of an ordinarily prudent servant to take the chances of the known or obvious dangers of his employment and to relieve his master of liability therefor. Contributory negligence is the causal action or omission of the servant without ordinary care of consequences. The one rests in contract, the other in tort."

Mr. Justice Holmes, speaking for the Supreme Court of the United States, in the case of *Schlemmer* v. *Buffalo, etc., Ry. Co.,* 205 U. S. 1, said: "An early, if not the earliest, application of the phrase 'assumption of risk' was the establishment of the exception to the liability of a master for the negligence of his servant when the person injured was a fellow servant of the negligent man. Whether an actual assumption by contract was supposed on grounds of economic theory, or the assumption was imputed because of a conception of justice and convenience, does not matter for the present purpose. Both reasons are suggested in the well known case of *Farwell* v. *Boston & Worcester Rd. Co.,* 4 Met. 49. But, at the present time, the notion is not confined to risks of such negligence. Assumption of risk in this broad sense obviously shades into negligence as commonly understood. Apart from the notion of contract, rather shadowy as applied to this broad form of the latter conception, the practical difference of the two ideas is in the degree of their proximity to the particular harm. The preliminary conduct of getting into the dangerous employment or relation is said to be accompanied by assumption of the risk. The act more immediately leading to a specific accident is called negligent. But the difference between the two is one of degree, rather than of kind; and when a statute exonerates a servant from the former, if at the same time it leaves the defense of contributory negligence still open to the master, a matter upon which we express no opinion, then,

unless great care be taken, the servant's rights will be sacrificed by simply charging him with assumption of the risk under another name."

In *Choctaw, O. & G. Rd. Co.* v. *Jones,* 77 Ark. 367, the court said: "The defense of contributory negligence rests on some fault or omission of duty on the part of the plaintiff, and is maintainable when, though the defendant has been guilty of negligence, yet the direct or proximate cause of the injury is the negligence of the plaintiff but for which the injury would not have happened. * * * On the other hand, the defense of assumed risk is said to rest on contract, which is generally implied from the circumstances of the case; it being a term which the law imports into the contract, when nothing is said to the contrary, that the servant will assume the ordinary risks of the service for which he is paid."

The object of this statute is the protection of men engaged in the dangerous occupation of mining. In considering a statute for a similar purpose, passed by Congress, regulating the operation of coal mines, where said act was in force in New Mexico, the court said: "The act of Congress does not give to mine owners the provilege of reasoning on the sufficiency of appliances for ventilation or leave to their judgment the amount of ventilation that is sufficient for the protection of miners. * * * This is an imperative duty, and the consequence of neglecting it can not be excused because some workman may disregard instructions. Congress has prescribed that duty, and it can not be omitted, and the lives of the miners committed to the chance that the care or duty of some one else will counteract the neglect and disregard of the legislative mandate." *Deserant* v. *Cerillos Coal Rd. Co.,* 178 U. S. 409.

In *St. Louis, I. M. & S. Ry. Co.* v. *Taylor,* 210 U. S. 281, the "Safety Appliance Act" of Congress was before the court, and it was said: "Where an injury happens through the absence of a safe draw-bar, there must be hardship. Such an injury must be an irreparable misfortune to some one. If it must be borne entirely by him who suffers it, that is a hardship to him. If its burden is transferred, as far as it is capable of transfer, to the employer, it is a hardship to him. It is quite conceivable that Congress, contemplating the inevitable hardship of such in-

juries, and hoping to diminish the economic loss to the community resulting from them, should deem it wise to impose their burdens upon those who could measurably control their causes, instead of upon those who are in the main helpless in that regard."

Applying the principles above quoted, it follows that the statute is imperative; that the company which fails to comply with it is guilty of negligence *per se* and is liable for all actions which proximately flow from such failure to perform this statutory duty, unless the negligence of the employee concurs with that of the master. The authorities are practically uniform in holding that contributory negligence is a defense to a breach of statutory duty. This was directly ruled in *Kansas & T. Coal Co.* v. *Chandler,* 71 Ark. 518, under this same statute, and again in *Mam. Vein Coal Co.* v. *Bubliss,* 83 Ark. 567. Whether it is open to the master, when he violates the statutory duty where the statute is one which the State, in a kind of paternalism, passes for the protection of persons who are deemed incapable of properly protecting themselves, to avail himself of the defense of assumed risk, is quite another question. These statutes are more frequent in dangerous employments, like railroad service, mining, and work around dangerous and complicated machinery.

The question above stated has been before the courts many times, and the decisions are in hopeless conflict upon it. The confusion is worse confounded because of many erroneous applications of the one doctrine when, under the facts, the other doctrine should have been applied. A learned writer on the subject calls attention to this, and gives many illustrations of it from courts of great learning and distinction (1 Labatt on Master & Servant, § 309), and of it he says: "The inexactness of terminology which has been discussed above is doubtless responsible, principally, if not altogether, for the doctrinal confusion between the two defenses which is often found in the arguments of judges."

The continuance of Johnson to work in his room after the company had refused to give him props was clearly an assumption of the risk of working without the props, if such risk was capable of being assumed in the face of this statute; whether his continuance without the props was negligence depends upon the obviousness of the danger he encountered in so doing. His con-

duct measures the one defense, and his relation to the master measures the other. That relation rests in contract, and the assumption of risks impliedly grows out of the contract, and is contractual in its nature.

Proceeding to the exact question—that is, whether there can be an assumption of risk against a violation of a statutory duty where the statute is for the protection of the safety of the employee:

A summary of the decisions is found in a note to *Denver & R. G. Rd. Co.* v. *Norgate,* 6 L. R. A. (N. S.), 981, in which it is stated that the Alabama, Massachusetts, Iowa, Rhode Island, Minnesota, New York, Ohio and Wisconsin courts have held that the risk of non-compliance with these statutory duties may be assumed, while the courts of Illinois, Indiana, Louisiana, Michigan, Missouri, Vermont and Washington have held to the contrary. Not all of these cases have been examined in this investigation, but all of the leading ones have been.

In the Federal courts, the situation is not bettered. The Circuit Court of Appeals of the Sixth Circuit, in *Narramore* v. *Cleveland, &c., Ry. Co.,* 96 Fed. 298, held that an assumption of risk is not a valid defense where the statute is for the protection of employees.

On the other hand, the Court of Appeals of this Circuit in two cases, *St. Louis Cordage Co.* v. *Miller,* 126 Fed. 495, and *Denver & R. G. Rd. Co.* v. *Norgate,* 141 Fed. 247 (6 L. R. A., N. S. 981), holds to the contrary. In the latter case Judge Carland says: "It is, however, conceded that there is nothing in the terms of the law which expressly repeals the law of assumption of risk; but it is contended that, if the defense of assumption of risk is allowed in actions like the one at bar, then the servant can contract the master out of the statute, and thereby render the statute of no force or effect. In other words, it is contended that, as the law of assumption of risk is a term of the contract between the master and servant, to allow the master the defense of assumption of risk in the case at bar would be to allow private parties to render nugatory by their contracts a public statute of the State of Colorado. The error in this contention is in assuming that the law of assumption of risk is created by the contract between master and servant. This error, we believe, has

led some courts to enunciate a false doctrine in regard to the question under discussion. A representative case among those which hold that statutes imposing a positive duty upon the master by implication repeal the law of the assumption of risk, is the case of *Narramore* v. *Cleveland, C. C. & St. L. Ry. Co.,* 48 L. R. A. 68, 37 C. C. A. 499, 96 Fed. 298. As this case has been followed by at least one of the State Supreme Courts (*Green* v. *Western American Co.,* 30 Wash. 87, 70 Pac. 310), we propose to show wherein we think the reasoning of the learned court in the Narramore case is not only faulty, but that, so far as the decision is based upon the decisions in England, a wrong conclusion was drawn as to what those decisions hold the law to be." *Denver & R. G. Rd. Co.* v. *Norgate,* 141 Fed. 247, 6 L. R. A. (N. S.) 981. And the Court of Appeals of the Second Circuit has held to the same effect in *Higgins Carpet Co.* v. *O'Keefe,* 79 Fed. 900.

It seems strange that the Court of Appeals of this (Eighth) Circuit should repudiate the doctrine of contract being the basis of assumption of risks, for in the earlier decision of *St. Louis Cordage Co.* v. *Miller,* 63 L. R. A. 551, 126 Fed. 495, where the same conclusion was reached as to the assumption of the risk for a violation of a statutory duty, that court had, in the language heretofore quoted, through Judge Sanborn, stated that assumption of risk is based upon contract. In that case Judge Thayer delivered a dissenting opinion which well states the reasoning on the other side of the question, as will be seen from the following excerpt:

"I do not concur in the foregoing opinion. The laws of Missouri (Rev. Stat. 1899, § 6433) required the defendant company to keep the gearing which occasioned the plaintiff's injury 'safely and securely guarded when possible' for the protection of its employees. This statute was enacted in pursuance of a sound public policy; that is to say, to insure, as far as possible, the safety of the many thousand artisans and laborers who are daily employed in mills and factories throughout the State, and while so employed are exposed to unnecessary risks of getting hurt if belting, gearing, drums, etc., in the establishments where the work are left uncovered when so situated that they may be covered readily. The act was inspired by the same motives which induced the Congress of the United States (Act March 2, 1893,

chapter 196, 27 Stat. at L. 531, U. S. Comp. Stat. 1901, p. 3174),
to require cars to be equipped with automatic coupling appliances
when it was discovered that hundreds of brakemen were annually
killed or made cripples for life by the use of the old-fashioned
couplers that do not couple by impact. A wise public policy
demands that, as far as possible, human life shall be preserved,
and that there shall not be in any community a large class of
persons who are unable to earn a livelihood because they have
become maimed and crippled through exposure to unnecessary
risks. The statute in question is not only a wise measure of
legislation, but was prompted by a humane spirit. For these rea-
sons it should not be so applied or construed by the courts as to
defeat the objects which the Legislature had in view, nor in such
a way as to render it less efficient than it was intended to be in
the promotion of such objects."

In the Narramore case, the reasoning of Judge Taft is as
follows: "If, then, the doctrine of the assumption of risk rests
really upon contract, the only question remaining is whether the
courts will enforce or recognize as against a servant an agree-
ment, express or implied, on his part, to waive the performance
of a statutory duty of the master imposed for the protection of
the servant, and in the interest of the public, and enforceable by
criminal prosecution. We do not think they will. To do so
would be to nullify the object of the statute. The only ground
for passing such a statute is found in the inequality of terms
upon which the railway company and its servants deal in regard
to the dangers of their employment. The manifest legislative
purpose was to protect the servant by positive law, because he
had not previously shown himself capable of protecting himself
by contract; and it would entirely defeat this purpose thus to
permit the servant 'to contract the master out' of the statute.
It would certainly be novel for a court to recognize as valid an
agreement between two persons that one should violate a crimi-
nal statute; and yet, if the assumption of risk is the term of a
contract, then the application of it in the case at bar is to do
just that." *Narramore v. Cleveland, etc. Ry. Co.,* 96 Fed. Rep.
298. This case has been approved by this court in the Jones,
Bubliss and Mangan case elsewhere cited.

This question was before the Indiana Supreme Court, under a statute requiring, as this one, the mine owner to furnish timber for the miners to prop their working places when demanded. The court said: "If a statute is a mere affirmation of the common-law duty of the employer with respect to providing safe working places and tools, the rule as to assumption of risk remains in force. The standard of care continues to be the conduct of the reasonably prudent person under like circumstances; and the means of measuring up to it may still be the subject for the joint judgment and agreement of the employer and the employee.

"If, however, the statute, as in this case, sets up a definite standard, and requires specific measures to be taken by the employer in providing safe working places and appliances, other considerations come into view. The very fact of such legislation indicates that the law-makers believed that the operation of the common-law rules did not afford the employee sufficient protection; that, under the development of the modern industrial system, tending to centralization of capital and impersonal management, the employer did not stand upon a footing of equality with the employer in contracting for his safety; and that the necessity of earning the daily wage frequently constrained the employee to put up with defective place and tools without complaint, by reason of his fear of the consequences of complaining."

And again the court said: "If the Legislature has clearly expressed the public policy of the State on a matter within its right to speak upon authoritatively, and if that public policy would be subverted by allowing the employee to waive in advance his statutory protection, the contract is void as unmistakably as if the statute in direct words forbade the making of it." *Davis Coal Co.* v. *Polland*, 158 Ind. 607.

The State of Missouri passed a statute providing that it should be no defense to an insurance company that the insured committed suicide, unless it should be shown to the satisfaction of the court or jury trying the cause that the insured contemplated suicide at the time he made his application for the policy, and any stipulation in the policy to the contrary should be void.

In a case wherein there was a contract containing stipulations contrary to the terms of the statute, the effect of the statute and the stipulation came before the Supreme Court of the United States, and that court, through Mr. Justice Harlan, said: "An insurance company is not bound to make a contract which is attended by the results indicated by the statute in question. If it does business at all in the State, it must do so subject to such valid regulations as the State may choose to adopt. . . . . The contract between the parties, evidenced by the policy, is, we think, an evasion of the statute, and tends to defeat the objects for which it was enacted. . . . . Looking at the object of the statute, and giving effect to its words, according to their ordinary, natural meaning, the legislative intent was to cut up by the roots any defense, as to the whole and every part of the sum insured, which was grounded upon the fact of suicide." And the court approved this language from the St. Louis Court of Appeals: "This was in effect a legislative declaration of the public policy of this State." *Whitfield* v. *Aetna Life Insurance Co.*, 205 U. S. 489.

In *Little Rock & F. S. Ry. Co.* v. *Eubanks*, 48 Ark. 460, it was attempted by contract to avoid a master's liability for negligence to a servant, and this court said: "If he can supply an unsafe machine, or defective instruments, and then excuse himself against the consequences of his own negligence by the terms of his contract with his servant, he is enabled to evade a most salutory rule;" and it was held contrary to public policy to permit it.

*A fortiori*, if the parties could not directly contract, there could be no implied contract for the assumption of the risk by the mere continuance in the employ, in the face of the violation of the statutory duty by the master. It would not be profitable to review further the decisions upon this subject. That has been well done by Judge Taft in the Narramore case, and by Judge Carland in the Norgate case, on opposite sides of the question, and in the opinion of the court, by Judge Sanborn in *St. Louis Cordage Co.* v. *Miller, supra,* and on the other side by Judge Thayer in his dissenting opinion in that case; and also by the editors of the Lawyer's Reports Annotated, in the note

to the Norgate case (6 L. R. A., N. S. 981). A recent compilation says: "There is some conflict of authority as to whether a master may avail himself of the defense of assumption of risk where the injury complained of resulted from his neglect of a duty imposed by statute. Where the defense is forbidden by the statute itself, he cannot of course rely upon it; and where there is no such inhibition, the weight of authority seems to be to the same effect, although there are decisions which maintain a contrary doctrine. If the object of the statute is other than the protection of the servant, the master's neglect of the duty imposed will not prevent his relying on the servant's assumption of risk." 26 Cyc. 1180.

It is the duty of this court to decide which is the sounder reasoning; and in pursuance of this duty the court decides that this statute is of that class referred to by the Supreme Court of the United States where the duty is imperative on the master to furnish these props in order to enable the employee to make safe his working place; and it is for the protection of a large class of laborers engaged in a dangerous occupation who are, by such legislation, not deemed capable of properly safeguarding themselves. The General Assembly has deemed it proper in this act to require protection in this particular, as in many others reaching to the safety of the men engaged in this hazardous work, and has thereby evinced the public policy of the State in this regard. And for a breach of such statutes the defense of assumption of risk is not applicable to the violator of the statute.

These statutes usually provide for a safe working place for the employee, or safe appliances with which to do his work; and it has been said in argument that cases holding that there can not be an assumption of risk for a violation of such statutes would not apply here, because this statute does not reach to the safety of the working place of the miner, as he makes his own room safe. It is true that, according to the mining custom, as developed from the evidence here, as in the preceding similar cases, the duty rests upon the miner himself to examine the roof and determine when it needs props; but it is for the company to furnish him the props with which to make his room safe when

he discovers the need of props and demands them. The relation of the master's duty in this regard to the working place was explained in *Kansas & T. Coal Co.* v. *Chandler,* 71 Ark. 518, where the court said: "The duty of the master to use due care to furnish a safe place for the servant to work would, under the circumstances here, be discharged by furnishing the servant an ample supply of suitable timbers with which to make the room safe." Thus the court recognized, and properly so, that the furnishing of props rested upon the master in order to provide a safe place for the servant to work. While it is true that the immediate act of making safe the room is in the hands of the miner himself, yet he cannot make brick without straw. (Exodus, 5:6-19.)

If this statute was a single enactment, there would be more force in the contention that it is a matter left open to contract, directly or impliedly, between master and employee, as the duty of discovering the need of props is placed upon the employee, and he must determine when his room is to be safeguarded; but it is a part of a statute containing many other provisions for the safety of miners, and the whole purpose of the legislation is to put an imperative duty upon the master engaged in this dangerous occupation to protect a class deemed incapable of properly protecting themselves without this legislation.

In the Patterson-Poe case, the attention of the court was not called to the difference between violations of statutory duties and common-law duties nor the class of statutes involved, and the court merely applied the general doctrine of assumption of risks without looking into the effect of this statute upon that general doctrine. Since examining this question, however, the court has come to the conclusion that it would not do to follow *Patterson Coal Co.* v. *Poe,* and so much of the language of it as indicates that there could be an assumption of risks as therein mentioned is disapproved. The case was correctly decided, as pointed out in the Bubliss case, but the decision should have been on the ground that the undisputed evidence showed contributory negligence.

II. That leaves for consideration the question of whether Johnson was guilty of contributory negligence in working in the mine after the company was in default in its duty to furnish

him props.  Had he been working under the drummy side of his room, which needed propping, then his case would have been exactly parallel with the Patterson-Poe case and the Bubliss case, and the court should have given a peremptory instruction upon the ground of contributory negligence.  But this case differs from them in this:  Instead of working in the dangerous part of the room, he worked upon the other side of the room, which he considered to be safe; he says that part of the roof was sufficiently propped; and, as near as can be gathered from the evidence, he was not nearer than twelve feet from the drummy part of the roof which was insufficiently propped.  He was an experienced miner, and had tested the roof that morning.  His evidence shows also that it might occur that the drummy part of the roof would fall without affecting the adjacent roof, but it might bring down other parts, as it did in this instance.

The question remains, whether his working in the room, a part of which was apparently secure and part of which was dangerous, must be declared as a matter of law negligence *per se.* The court cannot say that, under these facts, the danger was so obvious and imminent that no man of ordinary prudence and care would work there.  The exact question is fully discussed in both the Chandler and Bubliss cases (71 Ark. 518, and 83 Ark. 567, respectively), and in *Hamman* v. *Central Coal & Coke Co.,* 156 Mo. 232, and *Diamond Block Coal Co.* v. *Cuthbertson,* 76 N. E. 1060.

This question should have gone to the jury under proper instructions.

Judgment reversed and cause remanded.

McCULLOCH, C. J., (dissenting).  I do not hesitate in following the line of cases which are approved in the majority opinion, holding that the servant does not assume the risk of danger created by the failure of the master to perform the statutory duty of furnishing a safe place.  While the authorities on that question are nearly evenly divided numerically, I think those which hold against the servant's assumption of risk under those

circumstances are more in accord with sound reason and with natural justice. But what I object to in the decision of the majority is the application of that rule to a statute which does not require the master to furnish a safe place in which the servant is to work. The statute in question merely requires the master to furnish props for the servant to use in making his working place safe. It clearly contemplates—what is shown to be the custom in mining—that the servant is to look to the safety of his working place, and he is the sole judge from time to time of its safety. No duty is put upon the master except to furnish props. The latter is not even required to inspect the place, nor to ascertain whether it is kept safe. The working place of a coal miner is more or less dangerous at all times, for he is constantly extending his walls as he works out the coal; and because of the very nature of the work he must determine for himself when he can safely proceed beneath an unpropped roof. He calls on his employer for props as he needs them; and the fact that he calls for them manifests his knowledge of the fact that the roof of his room needs to be propped.

Now, the miner being the sole judge of the safety of his working place, and it being his duty to decide for himself when props should be used, it seems plain to me that when he proceeds with his work beneath an unpropped roof, or beneath one which, according to his own judgment, is insufficiently propped, he necessarily assumes whatever danger there is in so doing. He is guided entirely by his own judgment in determining whether or not it is safe to work in the place. It being a part of the contract that he shall make the place safe, it follows as a part of the contract that he should bear the loss of injury which results from a failure to keep it safe; and he is not absolved from that responsibility by the failure of the employer to furnish material with which to make the place of work safe. Notwithstanding the failure of the employer to furnish props, it is still the miner's duty to decide for himself whether or not it is safe to proceed without them, and he assumes the risk of proceeding.

It is different where the statute imposes upon the employer the duty of making the working place of his employee safe by doing certain things prescribed by the statute. The servant

does not assume the risk of danger arising from the negligence of the master in failing to make the working place safe; and when the statute specifically requires the master to do certain things in order to make the place safe, it would practically nullify the statute to hold that the servant assumes the danger in continuing to work. The effect of the statute is to make the master responsible for failure to comply with its terms, and the parties themselves cannot contract away the direct force of the statute and thereby shift the responsibility which it has placed upon the shoulders of the master.

Not so with a statute which merely requires the master to furnish material for the servant to use in making his own working place safe, which does not shift or alter the responsibility for failure to make the working place safe. All the cases holding that the servant does not assume the risk arising from the master's non-performance of a statutory duty relate to statutes which require the master to make the working place of the servant safe. *Narramore* v. *C. C. C. & S. L. Ry. Co.,* 96 Fed. 298; *Chicago-Coulterville Coal Co.* v. *Fidelity, etc., Co.* 130 Fed. 957; *Green* v. *Western American Co.,* 30 Wash. 87; *Spring Valley Coal Co.* v. *Patting,* 210 Ill. 342; *Diamond Block Coal Co.* v. *Cuthbertson* (Ind.), 76 N. E. 1060; *Hailey* v. *T. & P. Ry. Co.,* 113 La. 533; *Murphy* v. *Grand Rapids Veneer Wks.,* 142 Mich. 677; *Durant* v. *Lexington Coal Mining Co.,* 97 Mo. 62.

There are numerous other decisions to the same effect by the courts in the States above mentioned, but they all relate to similar statutes. The Indiana case above cited was based on a statute requiring coal operators to furnish props for use in the mines; but the statute also made it the duty of the master to inspect the working places of the miners and see that they were made safe by being securely propped. Our statute is different; it requires nothing of the master except to furnish props when requested by the servant to do so.

I think, therefore, that when the coal miner concludes that it is necessary to have props in order to make his working place safe, and calls for them, if the same are not furnished, and he

continues at work in the place where his judgment tells him more props are needed, he thereby assumes the risk of the danger.