ROACH *v.* HAYNES.

4-3489

Opinion delivered June 11, 1934.

*John Baxter*, for appellant.

*C. Warfield* and *Sam Robinson*, for appellee.

BUTLER, J. T. W. Roach, the appellant, is engaged in the work of the construction of levees, and as a part of his equipment a tower machine was in use. This machine is composed of a tower about one hundred feet high with cables, engines, etc., installed thereon. It was used for placing dirt on the levee by means of buckets or scoops moving on cables from a point between the levee and the river. This structure moved on wheels along a track made of cross ties and heavy timbers, constructed in sections called "mats." As the work progressed the tower was pulled along the track by means of a cable which was fastened to a "dead man" and wound around a drum, thence back under the machine. After the machine passed over one section the cable was attached to that section, which was then pulled underneath the machine to the front so that the machine could pass over it again. A small steam engine was used in pulling the machine forward and also for bringing forward the "mats" or sections. This engine was located on a platform about twenty feet above the ground floor. The floor of the machine was about six feet above the ground level at the rear and about four feet in front. It was constructed in this manner because it operated on a slope.

The appellee Haynes was in the employ of the appellant and in charge of the operation of the tower machine. On the 10th of October, 1932, in the regular course of his employment, the appellee was under the machine taking some measurements at a time when the "mat" over which the machine had just passed was about to be pulled forward. On a given signal the engine was started suddenly by the application of a full head of steam which caused the cable to vibrate violently from side to side, striking Haynes and severely injuring him. This suit was brought to recover damages for such injuries, and resulted in a verdict and judgment in favor of the appellee, from which is this appeal.

It is contended that the injury was the result of a risk assumed by the appellee; that there was no negligence on the part of the appellant proved, that the cause of the injury was the negligence of the appellee, and, lastly, that the case was submitted to the jury on improper instructions.

In determining these questions, under settled rules, we must view the evidence with every reasonable inference arising therefrom in the light most favorable to the appellee, and which so considered may be thus stated: The appellee was experienced in the nature of the work he was performing and aware of the danger ordinarily incident thereto. He had been in the employ of the appellant for some time before the accident occurred and had operated the tower machine, beginning about the first of August, 1931, for a few months. For an interval for some reason the machine was not in operation, and then about July, 1932, while the machine was at Greenville, Mississippi, appellant obtained a contract to construct a levee near Grand Lake in Chicot County, Arkansas. The machine was moved there and work began on that job about July 10th with Haynes in charge of the operation of the machine. At the time of the removal of the equipment, between the first and the tenth of July, Haynes notified the appellant that the small engine used for moving the machine forward and for bringing forward the "mats" was worn and defective. The appellant promised that he would have it repaired when it was taken "to the lower job." The defects were described to be the result of a worn condition, which caused about a fifty per cent. loss of power. The cylinders and pistons were worn, and, if the engine was started in the proper manner, it would come "on center" and stop. This necessitated the opening of the throttle wide and letting the steam start with full head in order that the engine would operate. This would cause the slack in the cable to be taken up quickly, resulting in the cable whipping from one side to the other. If the engine had been in proper condition, the proper manner of operation was to start it slowly, gradually applying the cable and tightening it

before applying full steam. The engine could not be repaired while on the job, and it would be necessary to stop operations and take it to some machine shop for the repairs to be made. The engine was not repaired before beginning work on the lower job, and Haynes called that fact to the attention of Mr. Frank Grant, who, according to the claim of Haynes, was the superintendent of the job. Grant promised several times to have it fixed at the first favorable opportunity when something would occur—such as rains or anything else which would cause the work to stop for a time—and that, on the occurrence of an event of this nature, the engine would be taken to the shop at Greenville and there be repaired. Relying on the promise of the appellant and Grant, Haynes continued to operate the tower machine up until the time of his injury and, not realizing the extent of his injury, operated it for some time longer.

The above facts are drawn from the testimony of the appellee. There was no dispute in the testimony as to the defective condition of the engine. As to the promise of repair, Mr. Roach, when asked if Haynes had made complaint to him at Greenville about the engine being defective, answered, "Not that I remember." Mr. Grant, in testifying regarding the notice as to the defective condition of the engine claimed by Haynes to have been given him and as to whether or not it was before or after the injury, when asked, "Did he ever make any such complaint to you," answered, "I don't think so—not before then. He did afterwards."

It will be observed that there were positive statements of Haynes regarding the notice and promise of repair both given to and made by Roach and Grant, while there is not a positive denial by them of those facts. There was therefore sufficient substantial evidence to warrant the conclusion of the jury that such notice was given and the promise of repair made.

There is a conflict in the testimony relative to the position Grant occupied and as to whether or not he was clothed with authority to represent the appellant with respect to shutting down the work for the purpose of hav-

ing the engine repaired. Haynes testified that Grant was general superintendent, and that, while he himself directed the operation of the tower machine, kept it in shape, and did such repairs to its structure or machinery as might be done without serious interruption of the work, the general supervision of the work was under Grant, from whom he received his orders. The testimony of Roach details the particular duties required of Grant, and that Haynes "was superintendent of the tower machine and had charge of all the machinery," but did not deny that given by Haynes to the effect that Grant was in charge of the general supervision of the work and that Haynes took his orders from him. The testimony of Grant relative to this told of his specific duties, which were that of a timekeeper and commissary man, and the statement that he did not have anything to do with the operation of the tower machine. But there was no denial by him of that part of the testimony of Haynes to the effect that he was clothed with general supervision of the work. We think that the evidence as to the authority of Grant to receive the notice of the defective condition of the engine and to have the repairs made is sufficient to justify the submission of that question to the jury, and its conclusion that he had such authority is binding on us, and therefore notice to him was as effectual as if made to the appellant himself. This state of case makes applicable the rule announced in *St. Louis, I. M. & S. R. Co.* v. *Holman*, 90 Ark. 555, 120 S. W. 146, cited by the appellee, and creates an exception to the rule that an employee assumes all the ordinary risks of his employment and such extraordinary risk as may result from defects in the instrumentalities used of which he is aware.

As said in the case cited *supra*: "The effect of a promise to repair by the master, and the continuance in his service by the servant, in reliance upon the promise, is to create a new stipulation, whereby the master assumes the risk impendent during the time specified for the repairs to be made. Where no definite period is specified in which the given defects are to be remedied, the suspension of the master's right to avail himself of the

defense of assumption of the risk by the servant continues for a reasonable time. 1 Labatt, Master and Servant, §§ 424, 425, and notes thereto. No matter how obvious the defects or how imminent the perils therefrom, the servant, pending the promise of the master to repair, does not assume the risk of the given defects by continuing in the master's service in reliance upon his promise. For, as was said by the Supreme Court of Illinois in *Swift & Co. v. O'Neill,* 187 Ill. 337 : 'By the promise of the master a new relation is created between him and the employee whereby the master impliedly agrees that the servant shall not be held to have assumed the risk for a reasonable time following his promise.' "

The appellee was skilled in the operation of the appliances with which the work was done and familiar with the dangers incident to the defects therein, and ordinarily, as insisted by the appellant, where the danger arising from the negligence of the master is so obvious in its nature as to be readily discoverable by one of ordinary intelligence, the employee, by voluntarily continuing in the situation, assumes the hazard which exempts the employer from liability on account of injury. This was the theory on which instruction No. 6, requested by the appellant and given by the court, was based, which instruction was more favorable to him than he was entitled to. This instruction and the appellant's theory would have been correct, had it not been for the notice given to the employer and his promise to repair. This fact distinguishes the instant case from those cited and relied upon by the appellant announcing the doctrine of assumption of risk. The promise of repair creates a new relation between the employee and the master which removes the assumption of risk for a reasonable time pending the compliance of the promise, and it is only where the danger is apparently so great and imminent that no prudent person would continue in the work that the assumption of risk would continue. See cases first cited and *Newport Mfg. Co. v. Alton,* 130 Ark. 542, 198 S. W. 120. In this case it cannot be said as a matter of law that the defect in the engine caused its operation to be so

dangerous that no prudent person under any circumstances would continue to use it or to work in close proximity thereto. *Johnson* v. *Mammoth Vein Coal Co.,* 88 Ark. 243, 114 S. W. 722, 123 S. W. 1180; *Pekin Cooperage Co.* v. *Duty,* 140 Ark. 135, 215 S. W. 715; *Mama Coal Co.* v. *Dodson,* 141 Ark. 438, 217 S. W. 475.

Appellant is in error in the contention that the evidence fails to show any negligence on his part. From the evidence accepted by the jury as true, he was negligent in the failure to repair the engine within a reasonable time after having received notice of its defects and after making promise to repair the same.

On the contention that the proximate cause of appellee's injury was not the negligence of appellant, it is argued that the injury was occasioned by the negligence of the appellee himself, in occupying a place of known danger without advising those who operated the engine that he was about to take this place. It is true that the appellee did not tell the operator of the engine, or any one else of the employees, that he was about to go under the tower machine, and, as argued by the appellant, he was well aware of the condition of the engine and that from the necessity of the manner of its operation the cables, in taking up the slack, would be switched and jerked about in varying degrees. But he was in the line of his duty in going under the machine, and this was necessary for the proper prosecution of the work. In testing the question of the degree of care the appellee took or failed to take, consideration should be given to the fact that he was engaged in the performance of necessary work and had to give to it his attention as well as the particular place he was then occupying. This place was twelve feet distant from the line of cable, and it is not shown that at that distance the appellee would have been in such an obviously dangerous place that one of ordinary prudence and caution would not have occupied it. It is well settled that, where an employee works in a situation where the danger is so obvious and imminent that no person of ordinary prudence would expose himself thereto, then the negligence would be such as to relieve the

employer of liability. On the other hand, however, where reasonable minds might draw different conclusions as to the danger and its imminence, it becomes a question of fact for the determination of the jury. *St. Louis, I. M. & S. R. Co.* v. *Mangan*, 86 Ark. 507, 112 S. W. 168; *Johnson* v. *Mammoth Vein Coal Co.*, 88 Ark. 243, 114 S. W. 722, 123 S. W. 1180; *E. L. Bruce Co.* v. *Leake*, 176 Ark. 705, 3 S. W. (2d) 6; *Newport Mfg. Co.* v. *Alton, supra.* The court submitted the question of the appellee's contributory negligence to the jury under an instruction which fully and correctly declared the law on that subject.

It is lastly insisted that instructions Nos. 1, 2 and 3 were repetitions of identical statements, the principal objection being that in all these instructions the court assumed as a matter of law that the engine was defective. We have examined these instructions and find them not open to the objections made. The question as to whether or not the engine was defective was submitted to the jury, and in this respect was more favorable to the appellant than it should have been. There is no dispute in the evidence as to the condition of the engine and no denial by any witness that the statements regarding the defective condition of the engine were not correct.

On the whole case, we find no error prejudicial to the appellant, and, as there is substantial evidence to support the verdict, the judgment is affirmed.