Missouri Pacific Rd. Co., Baldwin, et al., Trustees,
v. Westerfield.

4-4257

Opinion delivered April 6, 1936.

*Thomas B. Pryor* and *Harvey G. Combs,* for appellants.

*Clark & Clark* and *R. W. Robins,* for appellee.

Mehaffy, J. The appellee brought this action against the appellants in the Faulkner Circuit Court to recover damages for injuries alleged to have been caused by the negligence of the appellants. Among other things, he alleged in his complaint: "On January 13, 1934, the plaintiff was driving his automobile south along highway No. 65 at the southern corporate limits of the city of Conway, Arkansas, and while he was driving said automobile across an industrial track leading upon the main line of the track of the defendant, Missouri Pacific Railroad Company, into the property of the Conway Compress Company, the said defendant negligently, carelessly and without warning, ran a train of freight cars violently and suddenly against the automobile in which the plaintiff was traveling, turning said automobile partially over and dragging plaintiff's automobile for a distance of approximately 150 feet."

The complaint then alleges that the collision was caused solely by the negligence of appellants, and that appellee sustained painful, serious and permanent injuries, including a broken and stiffened arm, sprained back and shoulder, and other injuries, and that the injuries caused great pain and suffering, and caused him to expend certain sums for medical attention and hospital bills; that appellee's automobile was completely wrecked. It was also alleged that the appellants failed to keep a proper lookout for persons and property on said track, and failed to give any proper warning of the approach of said train, and failed to have said train of cars under any control whatever.

The appellants filed answer, denying all the material allegations in the complaint, and pleading contributory negligence. There was a jury trial, a verdict and judgment for $800. Motion for new trial was filed and overruled, and the case is here on appeal.

It is contended by appellants that the court erred by modifying one of the instructions requested by appellants, and that the court erred in giving this instruction as modified. The record shows that the court gave the instruction as asked by appellants without any modification, and the record does not show any objection or exception by the appellants.

The only other error alleged as to the instructions is that the court erred in its refusal to give an instruction directing the jury to return a verdict for the defendant. The appellants' theory is that the evidence is insufficient to sustain the verdict. This is the only question for our consideration.

The appellee testified that he was a physician, past 83 years of age, and had been practicing medicine in Faulkner County since 1894. The accident occurred south of town, where the side track crosses the highway going to Little Rock. He was traveling on highway 65, on which there is a great deal of traffic; was going south to Little Rock between 9 and 10 o'clock in the morning. The Missouri Pacific maintains an industrial spur track that crosses the highway from the main line over to the Con-

way Compress east of the highway; the highway runs north and south; the spur or industrial track is not used frequently; no warning sign is maintained by the railroad company, and he was keeping a lookout. This crossing is not treated as a regular crossing, in the way of putting up signs. He was traveling in a Plymouth coupe and going about 20 or 25 miles an hour. As he was traveling that morning, he saw a number of hitch-hikers every hundred feet or so on the right-hand or west side of the highway. He is not in the habit of picking up hitch-hikers, though a number of them tried to flag him that morning. There was nothing on the left side of the road to interfere with his view, but on the other side there were some bushes and things along down there, and a street crossing at the same place, just beyond the spur.. It was Saturday morning, and a number of people coming to town. He was watching out for cars. Does not know how close he was to the crossing when he saw the box car slip up there from behind the bushes, and a sign there that obstructed his view. As soon as he saw the box car he applied the brakes, but did not get his car stopped. He was just about on the track when he saw the box car, and he skidded about 30 feet before he hit the track. He applied the brakes with all his force, but could not keep the car from going on the track. The box car was coming toward him from the west. Saw three box cars together, but did not see any locomotive attached to the cars, and did not see any brakemen on the cars. The front box car struck his car and pushed it about 100 feet. The car was demolished and he was injured. He then describes his injury, but it is unnecessary to set out this testimony, because there is no question about the amount of the verdict.

Appellee testified on cross-examination that he did not see the cars until they turned in, and he could not stop. He was looking for cars passing that morning going and coming, and people coming to town, some on foot. There was nothing to prevent him from seeing the cars if he had been looking that way. The people that he saw appeared to be on the right-hand side of the track, and

he thought they were hitch-hikers. Appellee's testimony is corroborated by other witnesses, and it is undisputed that the appellants made what is known as a "flying switch," kicking the cars in from the main line onto this spur, and it is undisputed that appellants did this without having any person on any of the three cars. None of the train men or railroad men had any flag or lantern or anything to indicate that they were railroad men, and the appellee thought they were persons wanting a ride.

The witnesses for appellants testified in substance that they were protecting the crossing, a conductor on one side of the track, and the brakeman on the other. The conductor testified that he did his best to protect the crossing, but he did not claim to have any flag or anything that indicated that he was a railroad man, although the undisputed evidence shows there was a flag in the caboose, but he did not use it. He testified that the movement of the cars was the regular movement; that there was nothing to hinder appellee from seeing the cars that were kicked on the track. This testimony was corroborated by other evidence.

The undisputed facts are that the railroad company kicked or shunted these three cars from the main track onto the industrial track with no one on the cars to use the brakes if necessary, no possible way in which the cars could have been stopped or their speed checked, although they were kicked directly across a highway that was being traveled by the people constantly, and no explanation or reason is given for this. Railroad company contents itself by saying that it was the usual way. Everybody knows that it is dangerous to make a flying switch across a much traveled highway without any possibility of stopping the cars or checking their speed if they should discover some one on the track ahead of them. The evidence shows that the conductor was on one side of the track and the brakeman on the other side, but the evidence also shows that they had a flag in the caboose, but did not use it. It is a matter of common knowledge that on the public highways persons are constantly found on the side of the road flagging automobiles for the pur-

pose of trying to get rides. The evidence shows that at this particular place there were hitch-hikers, and Dr. Westerfield believed that these railroad men that were waving their hands were people wanting to stop him to get a ride. As to whether he was guilty of contributory negligence was a question of fact for the jury, and, while courts generally hold that making a flying switch across a public highway in the manner in which this was done is negligence, yet the question of the company's negligence was submitted to the jury.

As we have said, the only error complained of is that the court refused to direct a verdict for the appellants. "Under our judiciary system it is the province of the jury to determine the credibility of the witnesses and the weight of the evidence, under proper instructions as to the principles of law applicable thereto. And the court is never justified in directing a verdict except in cases where, conceding the credibility of the witnesses, and giving full effect to every legitimate inference that may be deducted from their testimony, it is plain that the party has not made out a case sufficient in law to entitle him to a verdict and judgment thereon." *St. Louis-San Francisco Railway Co.* v. *Pearson,* 170 Ark. 842, 281 S. W. 910. There are many decisions of this court to the effect that, if there is any substantial evidence to support the verdict of a jury, we cannot set the verdict aside. "In testing whether or not there is any substantial evidence in a given case, the evidence and all reasonable inferences deducible therefrom should be viewed in the light most favorable to the party against whom the verdict is directed, and, if there is any conflict in the evidence, or where the evidence is not in dispute, but is in such a state that fair-minded men might draw different conclusions therefrom, it is error to direct a verdict." *Smith* v. *McEachin,* 186 Ark. 1132, 57 S. W. (2d) 1043. We have often held that in determining the sufficiency of the evidence to support the verdict, we must view the evidence with every reasonable inference arising therefrom, in the light most favorable to the appellee. *Roach* v. *Haynes,* 189 Ark. 399, 72 S. W. (2d) 532; *Healy & Roth*

v. *Balmat,* 189 Ark. 442, 74 S. W. (2d) 242; *Camden Fire Ins. Ass'n* v. *Reynolds,* 190 Ark. 390, 79 S. W. (2d) 54; *Arkadelphia Sand & Gravel Co.* v. *Knight,* 190 Ark. 386, 79 S. W. (2d) 71.

The appellant cites and relies on *St. L.-S. F. Ry. Co.* v. *Williams,* 180 Ark. 413, 21 S. W. (2d) 611, and *St. L.-S. F. Ry. Co.* v. *Harmon,* 179 Ark. 248, 15 S. W. (2d) 310, and *St. L.-S. F. Ry. Co.* v. *McClinton,* 178 Ark. 73, 9 S. W. (2d) 1060. Appellants quote from these cases, on the question of a necessary lookout. We do not think these cases are applicable. In the instant case it is conceded that there was no lookout on the train of cars, and they were shunted across the highway without any lookout. It is true there were two men on the ground, the conductor and a brakeman. No matter what lookout they may have kept, they could not have stopped the cars. In view of the fact that hitch-hikers are constantly flagging automobiles, and especially at this particular place, the jury probably concluded that the appellee was justified in thinking these men were hitch-hikers, because there was nothing about them to indicate that they were railroad men.

There was substantial evidence to sustain the verdict, and, under the settled rules of this court, we have no authority to set the verdict aside.

The judgment is affirmed.