NEW YORK LIFE INSURANCE COMPANY *v.* WEEKS.

4-6238 148 S. W. 2d 330

Opinion delivered March 10, 1941.

*Louis H. Cooke* and *Rose, Loughborough, Dobyns & House,* for appellant.

*Giles Dearing,* for appellee.

MEHAFFY, J. On December 23, 1919, the appellant issued to appellee its policy insuring appellee's life in the sum of $2,500 and providing annual disability benefits equal to one-tenth of the face amount of the policy, together with waiver of premiums during disability. On November 12, 1929, the appellant issued another policy to appellee for the sum of $3,200 providing for disability benefits of $32 a month with increases after five and ten years of disability, and also providing for a waiver of premiums during disability. On August 22, 1930, the appellant issued another policy to appellee for $1,000 providing for disability benefits of $10 a month and providing for a waiver of premium during disability.

The appellee testified that he is a Baptist preacher, 53 years old, and has been continuously engaged in preaching since September, 1911, and had no other business or calling; about the last of January, 1931, he had influenza and pneumonia and remained in bed until February 22d; on April 8, 1931, he had a heart attack and was confined to his bed until he went to the Baptist Hospital in Memphis on April 29th and remained there until May 12th, and then stayed at his sister's house in Memphis until July, being confined to his bed until that time; he was then taken back to Clarendon; he spent almost two years continuously in bed and was unable to attend to any duties as a minister; in May, 1931, he made application to the appellant for disability benefits; the appellant sent doctors from Memphis who examined him and his benefits were thereafter paid and premiums waived until December, 1939; he was notified in January, 1940, that no further payments would be made.

The policies were introduced in evidence, and a letter from the appellant notifying him that no further disabilities would be allowed.

Appellee further testified that after he received this letter he paid the premiums on the policy; he has been unable to engage in any business or profession for profit

since 1931; he has a shortness of breath under the slightest exertion, and if tired, a choking feeling, and at times a striking pain in the right side of his head; since he became disabled, in the last five years he has performed three marriage ceremonies, but even that simple task fatigues him, and he must get an extra amount of breath before he can continue to read the ceremony; he is unable to do any manual labor; his income at Clarendon as pastor was $100 a month and a home; he has received $59 a month from the appellant and $41.66 from the Annuity Board of the Southern Baptist Conference, making a total of $99.66 a month; he has milked a cow occasionally.

The copy of the first proof of disability was introduced, prepared by Dr. McElroy, and it states that plaintiff has attacks of dyspnea, substernal pain and fluttering of the heart. It was also stated that the disability was said to have followed an attack of pneumonia in 1931. Diagnosis and symptoms of the disease are stated to be coronary arterio-sclerosis and chronic myocarditis, and the doctor stated that in his opinion the insured was wholly disabled, but that he might recover. He later had an attack of appendicitis and went to the doctor for an operation, but the doctor did not operate because of the condition of his heart; he does not attribute his disability to appendicitis.

Appellee further testified that he owns a farm of about 80 acres near Earle, and rents it for cash; the tenant comes to appellee's house and pays cash rent or executes a mortgage; it does not require much effort on appellee's part; it takes about five minutes to perform a marriage ceremony and this tires him out; the fair rental value of the home he was furnished in Clarendon is $25 a month; his salary there was the smallest he had received in fifteen years; $200 a month would be about the average salary; had to be examined and found to be disabled before receiving the annuity from the Southern Baptist Board; he is still receiving this annuity; as a matter of choice, he would rather work than receive aid from the church and insurance company; he has had no

training and experience in any line of work other than preaching.

Dr. Leroy testified that he had examined the appellee and found no leak or valve damage or other organic injuries, but did find a high degree of heart incapacity; that the heart was not able to withstand ordinary strain; small actions tend to make it accelerate a little out of proportion, and small efforts tend to make him short of breath and uncomfortable. The condition found by Dr. Leroy was one of extreme or well developed and long continued damage to heart muscle itself, what they call myocarditis; he said there was no lesion or tear or cut, but the substance of the muscle itself had been damaged to such an extent that it cannot perform much of any function; the damage they found in this case is damage to the heart muscle itself; the strain of years of illness and extreme toxin poisoning weakening have left those muscles in not a normal degree of resistance or strength; it is degeneration of the heart itself. The doctor stated as a rule in most instances of heart weakening following influenza or pneumonia, some cases recover pretty well in a few months; if they have not recovered pretty well within that time, then that group of cases generally last a long time, sometimes indefinitely; if appellee's heart has gone on for nine years without improvement, but is stationary or getting worse, he would not expect it to regain any strength; it would have done the repair work long before nine years; sometimes no examination will reveal defective muscle except a microscopic piece taken out of the heart at post mortem.

There was a verdict and judgment in favor of appellee for $567.68. The case is here on appeal. There was other testimony, but the above is sufficient to show that there was substantial evidence to support the verdict.

The appellant states that its sole contention in this case is that the trial court erred in refusing to direct a verdict in its favor.

The well settled rule is that in testing the sufficiency of evidence to support the verdict of the jury, this court must view the evidence with every reasonable

inference arising therefrom in the light most favorable to the appellee, and this court is bound by the most favorable conclusion that may be arrived at in support of the verdict rendered by the jury, and can only determine whether or not there was any substantial evidence to support the verdict. *Mo. Pac. Trans. Co.* v. *Jones,* 197 Ark. 79, 122 S. W. 2d 613; *Mutual Benefit Health & Accident Ass'n* v. *Basham,* 191 Ark. 679, 87 S. W. 2d 583; *St. L.-S. F. Ry. Co.* v. *Hall,* 182 Ark. 476, 32 S. W. 2d 440; *Union Security Co.* v. *Taylor,* 185 Ark. 737, 48 S. W. 2d 1100; *Ark. Baking Co.* v. *Wyman,* 185 Ark. 310, 47 S. W. 2d 45; *Pekin Wood Products Co.* v. *Mason,* 185 Ark. 166, 46 S. W. 2d 798; *Ft. Smith Traction Co.* v. *Oliver,* 185 Ark. 227, 46 S. W. 2d 647; *S. W. Gas & Elec. Co.* v. *May,* 190 Ark. 279, 78 S. W. 2d 387; *S. W. Bell Tel. Co.* v. *Balesh,* 189 Ark. 1085, 76 S. W. 2d 291; *Arkadelphia Sand & Gravel Co.* v. *Knight,* 190 Ark. 386, 79 S. W. 2d 71; *Roach* v. *Haynes,* 189 Ark. 399, 72 S. W. 2d 532; *Sovereign Camp, W. O. W.,* v. *Cole,* 192 Ark. 326, 91 S. W. 2d 250; *Reed* v. *Baldwin, et al., Trustees, Mo. Pac. Rd. Co.,* 192 Ark. 491, 92 S. W. 2d 392; *Mo. Pac. Rd. Co., et al.,* v. *Westerfield,* 192 Ark. 558, 92 S. W. 2d 862; *Safeway Stores, Inc.,* v. *Mosely,* 192 Ark. 1059, 95 S. W. 2d 1136; *D. F. Jones Const. Co., Inc.,* v. *Lewis,* 193 Ark. 130, 98 S. W. 2d 874; *Doda* v. *Raines,* 193 Ark. 513, 100 S. W. 2d 973.

The late Justice BUTLER, speaking for the court, said: ''The verdict must rest on the uncorroborated testimony of the appellee. The question as to where lies the preponderance of the evidence is not for us to say. That is the duty of the trial judge, who, by his refusal to set aside the verdict, has set his seal of approval upon the truthfulness of the testimony given by the appellee. This conclusion, under settled principles of law, we are forced to adopt. We, therefore, treat the testimony of appellee as true and view it in the light most favorable to him, and if it appears from that testimony that there is substantial evidence to support the verdict, we, too, must approve it.'' *Norton & Wheeler Stave Co.* v. *Wright,* 194 Ark. 115, 106 S. W. 2d 178.

The rule as to what constitutes total disability is well settled in this state, and in the case of the *Missouri State*

*Life Ins. Co.* v. *Snow,* 185 Ark. 335, 47 S. W. 2d 600, the rule was stated as follows: " 'Total disability does not mean absolute physical disability on the part of the insured to transact any kind of business pertaining to his occupation. Total disability exists, although the insured is able to perform occasional acts, if he is unable to do any substantial portion of the work connected with his occupation. It is sufficient to prove that the injury wholly disabled him from the doing of all the substantial and material acts necessary to be done in the prosecution of his business, or that his injuries were of such a character and degree that common care and prudence required him to desist from his labor so long as was reasonably necessary to effect a speedy cure.' "

The court also in that case said: "Of course, such a provision in a policy does not require that the insured shall be absolutely helpless or insane, but there must be such disability as renders him unable to perform all the substantial and material acts in the prosecution of a gainful occupation."

Under the rule adopted by this court as to the meaning of the disability clause in a policy, there was substantial evidence to justify the jury in finding that appellee was totally and permanently disabled.

The judgment is affirmed.