THE SUGAR CREEK MINING COMPANY

*v.*

EMANUEL PETERSON.

*Opinion filed December 21, 1898.*

1. APPEALS AND ERRORS—*objection that verdict is unsupported by
evidence must arise in trial court*    The Supreme Court cannot consider
an objection that the verdict in a suit at law is not supported by
the evidence, where that question is not raised in the trial court.

2. NEGLIGENCE—*acts of negligence, unconnected with injury, cannot be
shown.*    In an action by a miner for injuries from a falling roof the
plaintiff cannot show that the roof in another part of the mine had
fallen on a previous occasion, where such fact had no influence in
producing the injury.

3. EVIDENCE—*when question of master's notice is not in issue.*    Evi-
dence that a portion of the roof of the room in which a miner was
working had fallen more than a week prior to the injury is not ad-
missible for the purpose of showing notice to the company of the
dangerous condition of the roof, where the company had already
sent props and timbers to the room before the injury occurred.

4. MINES—*what not a violation of act requiring owners to supply miners
with props.*    The fact that timbers sent at the request of a miner,
to be used as props, are too long, does not show a willful violation
of the statute requiring mine owners to keep timbers on hand to
supply the miners, where the height of the mine varies in different
parts and the miner fails to specify the length of timbers desired.

5. INSTRUCTIONS—*when an instruction assumes that roof of mine was
unsafe.*    The assumption in an instruction of the fact that the roof
of a mine is unsafe is not sustained as a conceded fact where the

evidence shows that the injured miner tested the roof with his pick and with a hammer and sledge, and regarded it as safe.

6. SAME—*instruction holding theory having no basis in evidence is erroneous.* An instruction in a personal injury case which authorizes a recovery by the plaintiff regardless of his exercise of due care is erroneous, in the absence of any evidence tending to show that the injury was willful or wanton.

*Sugar Creek Mining Co.* v. *Peterson,* 75 Ill. App. 631, reversed.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Sangamon county; the Hon. OWEN P. THOMPSON, Judge, presiding.

CONKLING & GROUT, for appellant.

PATTON, HAMILTON & PATTON, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Appellee was injured by coal falling on him from the roof of a room where he was at work in appellant's mine, and he recovered a judgment for $2500 against appellant for his damages, which judgment has been affirmed by the Appellate Court.

The first branch of the argument for a reversal of the judgment is devoted to the proposition that the verdict is unsupported by the evidence. This question was not raised at the trial by a motion to exclude the evidence, instruction to find the defendant not guilty, or otherwise, and it cannot receive attention here.

The next point made is, that the court erred in admitting evidence of a previous fall of clods or roof at another place in the same room of the mine. According to the testimony of plaintiff, which was the most favorable statement of his claim presented to the jury, he was working in room 12 "second south" entry, where he had been for about three weeks. This room was about thirty feet wide, and had been worked back twenty-five feet

from the mouth or entry when he commenced. He worked with a partner, or "butty," as the partner was called, and changed partners while working there, and during the three weeks worked the room out twenty-five feet further, so that at the time of the accident it was thirty feet wide and fifty feet in length. For the last fifteen feet plaintiff left the top layer, or ply of coal, as it was called, about five or six inches thick. He had propped the rest of the roof where the coal was all taken out, but no props had been set under the part where the layer of coal was left overhead, for a width of about fifteen feet from the face of the coal. He asked for props, and a load was brought the afternoon before the accident. They were too long for the place where they were to be used, and it was necessary to saw them off so as to make them of the right length. He told the mule driver, Fred Wunderlich, who brought the load of props, that he wanted some sawed off, and the driver told him that his brother would be in after a while and saw some. This brother, who was known as "Peanut" Wunderlich, was employed by defendant for that purpose. Plaintiff testified that the boy did not come, and the next morning he told the "straw boss" that he wanted some props sawed, and the boss said he would send some one right away. Plaintiff then examined the roof by thumping it with his pick under the layer of coal where he was going to work, and to further satisfy himself whether it was loose, took his iron wedge, used to wedge coal down, and put it in and struck it a few times with a sledge. He could not get his wedge into it and had no effect toward parting the coal from the roof. Having made these tests, and thinking the roof safe, he went to work where they had fired a blast in the coal the evening before. He had been at work about thirty minutes when a part of this layer or ply of coal fell, causing the injury.

It will be seen that the ground for recovery presented to the jury by this evidence was, that props which had

been furnished plaintiff to prop up and secure the roof for his safety were too long for the place where they were to be used, and that there was such delay in sending some one to saw them off as constituted negligence. The evidence objected to was, that something more than a week before this accident a place in the roof near the entry where the coal had all been taken out fell from the effect of a water pocket, which swelled and loosened it. Plaintiff was allowed to go into this matter with several witnesses to prove the fall, and that the place was propped afterward and made secure. It was not near the place of this accident and under entirely different conditions, and nothing that was done or omitted at that time with respect to that place had any influence whatever in causing this accident or producing any injury to the plaintiff, who suffered no harmful consequence whatever from it. The fact so proved was wholly immaterial to this controversy, and the only purpose or effect of the evidence would be to show to the jury that there had been some negligence on the part of the defendant at another time and place. The suggestion that the evidence was admissible to prove notice to defendant that props were needed at this time and place is without force. Conditions were different and the roof was not the same. There was no question of notice in issue. It was not denied that plaintiff gave notice that props were needed, and the load was hauled in in consequence of such notice. The evidence had no legitimate place in the case, and was certainly harmful to defendant.

The first three instructions offered by plaintiff and given by the court are as follows:

"The court instructs the jury that the operators of a coal mine must use all ordinary care to keep their workings in a reasonably good and safe condition, and if you believe, from the evidence, that the defendant had notice that the room in which the plaintiff was working was in an unsafe condition, and that the plaintiff requested of

the defendant to deliver props of sufficient length and dimensions with the empty cars of the plaintiff, so that the plaintiff might at all times be able to properly secure the workings for his own safety, and that the defendant promised to so deliver such props and failed to furnish said props, and that by reason thereof, while in the exercise of due care and caution for his own personal safety, the plaintiff was injured, as charged in the first count of the declaration, you will find the defendant guilty, and assess such damages as you believe, from the evidence, that plaintiff is entitled to recover.

"The court instructs the jury that it was the duty of the defendant to deliver to the plaintiff, as required by him, with his empty cars, timber of sufficient length and dimensions to be used as props and cap pieces, so that he might have been able to properly secure the workings for his own safety; and if the jury believes, from the evidence, that the plaintiff requested the defendant to deliver to him props of sufficient length and dimensions for his use to properly secure said workings for his own safety, and that the defendant willfully neglected or failed to furnish such props to the plaintiff upon such request, and that the plaintiff was injured by reason of such willful neglect of the defendant to furnish such props, as charged in the second count of the declaration, then you will find for the plaintiff, and you will assess his damages at such amount as you believe, from the evidence, he is entitled to recover.

"The court instructs the jury that if you believe, from the evidence, that the defendant willfully failed to deliver props of sufficient length and dimensions with the empty cars of the plaintiff when requested so to do by the plaintiff, so that the plaintiff might at all times be able to properly secure the workings for his own safety, and if you further believe, from the evidence, that the plaintiff was injured and that such injury was caused by the willful failure to furnish props, as charged in the

second count of the declaration, then the defendant is liable for such injury, although the plaintiff may have been negligent and such negligence may have contributed to such injury."

The first of these instructions assumed as a fact that the room in which plaintiff was working was in an unsafe condition, and the justification for this assumption offered by counsel is that the fact was conceded. Plaintiff testified that he tested the roof with his pick and by the use of a wedge and sledge hammer, and being unable to loosen the coal regarded it as safe to go to work under. It could scarcely be assumed as a conceded fact, in view of his testimony, that the roof was actually dangerous before that time when he called for the props. Again, this instruction, and the next one, submitted to the jury, as a ground for recovery, the question whether plaintiff requested of the defendant to deliver to him props of sufficient length and dimensions to properly secure the workings, and the failure to furnish said props. There was no evidence whatever that plaintiff called for props of any particular length or dimensions, and that there was a failure to furnish according to his requirement. Props were furnished, and after they were furnished he simply said that they were too long. The height of the roof differed in different parts of the mine and in different parts of this room. Plaintiff was the one who was to secure himself by putting up these props, and he could adjust them in his own way. He certainly could not complain that the props were not fitted in length without letting defendant know what lengths were required. It would not create a liability that the props were not of the precise length required for the height of the room or the particular place in the room where plaintiff desired to set them, unless the defendant should fail to have them made of the proper length when notified. The statute required defendant to keep a supply of timber constantly on hand of sufficient length and dimensions to be

used as props and cap pieces, and to deliver the same to the plaintiff as required.    He made no requirement as to length, and the props were furnished, so that his case must rest solely on the claim that there was unreasonable delay in sawing them off to meet his requirement, as made known to the straw boss. If there had been any delay in furnishing props before that time no harm had resulted from it to any one, and if there was any fault it was in the delay in sawing them off after they were furnished, so that they could be put up.

The second and third of said instructions submitted to the jury the question whether the defendant willfully neglected or failed to furnish props, and upon that hypothesis the second omitted any requirement of care on the part of the plaintiff, while the third expressly stated that the defendant would be liable although the plaintiff might have been negligent and his neglect might have contributed to his injury.    There was no evidence which would justify an instruction on the theory of a willful violation of the statute.    Plaintiff was to put up the props where he pleased and as he pleased, and after his request to the foreman to send some one to saw them the length to suit him it was only a short time until the accident. Defendant had a boy employed to do that work about the mine.    It does not appear where he was at the time, but there was nothing in the circumstances to indicate a willful and deliberate intention to disregard the statute or from which such an inference could be drawn.    That feature of the instructions is not based on any evidence in the case.    We regard these instructions as erroneous and prejudicial to defendant.

The judgments of the Appellate and circuit courts are reversed and the cause is remanded to the circuit court.

*Reversed and remanded.*