C. F. EBLIN, Admr., Appellee, *vs.* THE AMERICAN CAR AND FOUNDRY COMPANY, Appellant.

*Opinion filed February 19, 1909.*

1. EVIDENCE—*when proof that witnesses did not hear notice given is proper.* Where a witness for the defendant testifies that he walked between two strings of cars on adjacent tracks, which were about four feet apart, calling in a loud voice for men working under one string to get out,—that the cars were to be moved,— testimony by the men working under the other string that they heard no notice or warning is not negative testimony, but is competent as tending to show that no such notice as claimed was given. (*Chicago and Northwestern Railway Co.* v. *Moranda,* 108 Ill. 576, and *Sugar Creek Mining Co.* v. *Peterson,* 177 id. 324, distinguished.)

2. INSTRUCTIONS—*when instruction is not subject to criticism made.* In an action for damages for death by wrongful act an instruction stating that a servant "does not assume extraordinary or unusual risks, nor risks due to the master's own negligence, unless the servant had notice of such perils or by the exercise of ordinary care should have had notice thereof," is not subject to the criticism that it informs the jury the deceased did not assume risks due to the negligence of the defendant.

3. APPEALS AND ERRORS—*Supreme Court cannot weigh the evidence in a personal injury case.* While it is proper for the Appellate Court to consider evidence favorable to the defendant in

determining whether a verdict for plaintiff is against the weight of the evidence, yet such evidence cannot be considered by the Supreme Court in determining whether there is any evidence fairly tending to sustain the cause of action.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Madison county; the Hon. B. R. BURROUGHS, Judge, presiding.

WISE, McNULTY & KEEFE, for appellant.

J. M. BANDY, and D. J. SULLIVAN, for appellee.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

On July 27, 1907, the appellant, American Car and Foundry Company, was operating an extensive factory at Madison, in Madison county, for the manufacture of railroad cars, and Carl Eblin, the son of appellee, was one of its employees. The cars were substantially completed in the shop and were then run out upon what were called "shipping tracks," to be gone over and finished. There were two of these tracks, numbered 5 and 6, each capable of holding a great many cars. When cars were placed on them they were carefully gone over and screws, bolts and everything about them made tight, ready for inspection by the purchaser in connection with the inspector of the appellant. There were about one hundred and twenty-five men engaged in doing the work on these shipping tracks under the control of Pat Shay, general foreman, and Adam Diersoph, Thomas Britt and Harry Green, assistant foremen. There were thirty-five cars standing on track No. 5, and the inspector of the company had gone over the trucks and found five that had rough journals, necessitating taking them back to the shop. Appellant had a switch engine and employed a switching crew to move cars about the yard and from the shop to the tracks, as the business required.

238—12

It was Saturday, and the dinner hour on Saturday was thirty minutes and on other days forty minutes, and the rule was to blow the whistle ten minutes before time to go to work. On Saturdays the dinner hour was from 12 to 12:30, and a whistle was blown at 12 o'clock and another at 12:20 and the third at 12:30, when the men were expected to be in their places and to begin work. Carl Eblin was one of the men at work on track No. 5, under the cars, and when the whistle was blown at 12 o'clock he came out from under the car where he was working and went with his father, the appellee, inside of the shop yard, where they ate their dinner. The whistle blew at 12:20, as usual, and Carl Eblin then went to the car where he had been at work and went under the car with his hammer and chisel. He was sitting astride of one of the rails, and shortly before the 12:30 whistle was blown the switch engine shoved in upon the track a lot of cars, pushing the standing cars a short distance and running over and killing Carl Eblin. The appellee was appointed administrator of the estate of his son and brought this suit in the circuit court of Madison county to recover damages suffered by the next of kin from the death of his intestate. The declaration consisted of two counts, which charged the defendant with moving the cars suddenly, without warning or notice. There was a trial, resulting in a verdict for $1900, upon which judgment was entered, and the Appellate Court for the Fourth District has affirmed the judgment.

The argument upon the assignment of errors is under three heads: First, that the court erred in admitting improper evidence on the part of the plaintiff; second, that the court gave improper instructions at the request of the plaintiff; and third, that the court erred in refusing to direct a verdict of not guilty. The third is subdivided under the two heads that there was no evidence fairly tending to prove that the cars were moved suddenly and without warning, nor that the deceased was in the exercise of proper care.

The rule of the yard was, that when the switching crew were about to take cars from the finishing track or set cars in, if men were working about them the engine would back up to the first car and the switchmen would then go along each side of the track and call out to all the workmen under the cars that the cars were going to be switched and to get out and take their tools from under them. If the switching was to be done on track No. 5, the usual method was to cry out, "All out on track No. 5." Switching was frequently done at the noon hour, and if it was to be done at that time the foremen notified the men to have their tools and things out from under the cars. No notice of any kind was given at the time when the engine was backed in and the cars moved on the occasion now in question, but it was contended by defendant that notice had been given by the foreman and assistant foremen between 11:30 and 12 o'clock that switching would be done on the track during the noon hour. The evidence which is alleged to have been improper consisted of the testimony of men who were working on track No. 6, adjoining the track on which the deceased was working, that they did not hear any notice given that the cars were going to be moved. The objection stated by counsel was that the issue was whether notice was given to the deceased, and it was therefore immaterial what notice was given to these witnesses or whether any notice was given to them. It was not claimed that any notice to the witnesses was required, and, of course, none was necessary, as they were working on the other track; but the lines of cars on the two tracks were only four feet apart, and there was no dispute of the fact that the custom was to call out in a loud tone of voice along the track on which cars were to be removed and between the tracks, so that those under the cars could hear. The foreman and each of his three assistant foremen testified that they gave the notice on this occasion, and two of them testified that one went down the outside of the cars and the other be-

tween the two tracks, calling out in a loud voice and telling
the men to get from under the cars,—that they were going
to move or switch them,—and that they gave the deceased
personal notice. If that testimony was true and a foreman
went down between the two tracks calling in a loud voice
to the men, those who were under the cars on track 6 were
as near as those working on track 5 and ordinarily could
hear the warning just as well. Their testimony that they
heard no notice or warning was not negative, but tended to
prove that no such notice as claimed was given. There was
some evidence for the defendant that a steam air-hammer
was operating somewhere on track No. 6 and made consid-
erable noise, but if that was so there would be no great
difference as between the two lines of cars so close together.

Counsel attempt to liken the testimony to that which
was held incompetent in *Chicago and Northwestern Rail-
way Co.* v. *Moranda,* 108 Ill. 576, where the roadmaster
testified that he had given Moranda instructions a number
of times about getting out of the way of trains, and the
plaintiff called several other men who worked under Mo-
randa and they testified that the roadmaster gave them no
such instructions. The fact that the other men received no
instructions did not tend to prove that the roadmaster did
not instruct Moranda. But that is a very different case
from one where witnesses within hearing distance did not
hear notice alleged to have been given and where the fact
testified to tends to prove that the notice was not given.
Neither is the testimony in the same class as that which
was held incompetent in *Sugar Creek Mining Co.* v. *Peter-
son,* 177 Ill. 324, which tended to prove that the defendant
had been negligent at a different time and place from the
time and place involved in the suit.

It is next complained that the court gave an improper
instruction at the request of the plaintiff, as follows:

"The court instructs the jury that the servant only as-
sumes the usual and ordinary risks incident to the business,

and such risks as are known to him or which might have been discovered by him by the exercise of ordinary care. But the servant does not assume extraordinary or unusual risks, nor risks due to the master's own negligence, unless the servant had notice of such perils or by the exercise of ordinary care should have had notice thereof."

The instruction is said to be incorrect for the reason that it informed the jury that the deceased did not assume risks due to the negligence of the defendant. No other instruction on the subject of assumed risks was given to the jury, and the only information the jury had as to the law on that subject was this negative instruction as to what risks were not assumed. It stated the converse of a proposition which was not before the jury by any other instruction, so that the jury did not receive any fair or full statement of the rules relating to assumption of risks. While we do not say that the court might not properly have refused the instruction, it is not subject to the criticism made and differs from the instruction condemned in *Kath v. East St. Louis and Suburban Railway Co.* 232 Ill. 126.

By the rest of the argument counsel seek to sustain their claim that the court erred in not directing a verdict of not guilty on their motion. They assert, with apparent confidence, that there was no evidence fairly tending to prove that the cars were moved suddenly and without warning nor that the deceased was in the exercise of proper care, and then, as frequently happens, proceed to support their claim by the testimony of their own witnesses. After alluding to the testimony for plaintiff tending to prove that no notice was given, they recite what was testified to by their witnesses Patrick Shay, the foreman, Adam Diersoph, Thomas Britt and Harry Green, the assistant foremen, that they gave the alleged notice before the noon hour, and also the testimony of William Kegley, the chief inspector, that he heard Shay giving the notice, and the testimony of their witnesses John Schuster, Stephen Gerhart, Charles Tienan

and W. C. Maupin, which they claim was of a corroborative nature. They say that this positive evidence proved that the deceased was notified. But if they had eliminated from the argument this improper matter, which could not be considered on the question of law whether there was any evidence fairly tending to sustain the cause of action, there would have been no argument left. The evidence for the plaintiff fairly tended to prove that no notice was given at any time.

No notice of any kind was given when the cars were pushed in on the track, and there was evidence for plaintiff that it was not customary to move cars at the noon hour under a general notice, after the whistle had blown preparatory to going to work. Immediately after the 12 o'clock whistle blew, the switch engine took out twenty-three cars from track No. 5 and the five cars with rough journals were put on another track. The remaining cars were pushed back on track No. 5 shortly before the men were to go to work at 12:30, and one witness testified that it was just a minute before. The evidence for the plaintiff was that the men might be out or around the grounds, and that the 12:20 whistle was blown to notify them to get back to their places and be ready to begin work. Under that evidence the court could not say, as a matter of law, that further notice was not required before moving the cars. The evidence that the foreman and his assistants went along the track and gave notice was proper for consideration by the Appellate Court in determining the question whether the verdict was against the weight of the evidence, but that question is not open in this court.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*